6891

## GASTON. v. GASTON.

1. JURISDICTION—PROBATE COURT—ADMINISTRATION.—In a suit by administrator in probate court to sell lands in aid of assets, the court has jurisdiction to ascertain the debts of a deceased heir at law whose administrator is a party defendant, and whose answer seeks affirmative relief and also sale of lands of his intestate in aid of assets.

2. PARENTS AND CHILD—NURSE BILL.—The rule as to proof of contract for services of child to parent since deceased applies in case of services by step-daughter to step-mother. Evidence here held to show services were rendered and received under expectation that compensation would be made.

3. DEBTOR AND CREDITOR—ADMINISTRATION.—POWER not coupled with an interest is limited to the lifetime of the donor. One buying notes of a decedent after his death, at his request, and under his promise to pay them out of his estate, made in his lifetime, has no higher rights than an assignee of the notes.

4. LIMITATION OF ACTIONS.—A note of a decedent against which the statute had begun to run in his lifetime, but who dies before the bar is complete, may be sued after the statutory bar and within one year after grant of administration.

5. DEBTOR AND CREDITOR—ADMINISTRATION.—Claim of son for expenses of a trip from a distant State to visit his father in his lifetime at his request and under promise to pay out of his estate, allowed.

Before DANTZLER, J., Spartanburg, December, 1906. Affirmed.

Action in Probate Court of Spartanburg County by L. Gaston, admr. of estate of T. P. Gaston, against V. R. Gas-

ton *et al.* From Circuit decree modifying probate judgment, defendants appeal.

*Messrs. Julius E. Boggs* and *J. P. Cary,* for appellant. *Mr. Boggs* cites: *Plaintiff can not convert gratuity into a charge:* 34 S. C., 256; 45 Am. R., 394; 35 S. C., 551; 2 Strob., 521; 38 S. C., 167; 15 Ency., 1083; 2 Bay., 101; 3 Strob., 321; 2 Bail., 308.

*Mr. Cary* cites: *Probate Court had no jurisdiction to determine claims against estate Mary A. Gaston:* 65 S. C., 308; 30 S. C., 273; 29 S. C., 260; 49 S. C., 505. *Question may be raised at any time:* 12 Ency. P. &. P., 125, 188; 54 S. C., 545; 25 S. C., 385, 416; 74 S. C., 440. *What promise arrests statute:* 2 Strob., 348. *No contracts have been shown to establish the nurse bill and travelling claims:* 67 S. C., 245; 34 S. C., 257; 53 S. C., 384.

*Mr. Stanyarne Wilson,* contra, cites: *Probate Court had jurisdiction to determine debts in both estates:* 65 S. C., 308; 37 S. C., 168; 49 S. C., 36; 52 S. C., 518; 51 S. C., 399; 12 Ency., 299. *The evidence supports contract to pay nursing:* 67 S. C., 245; 53 S. C., 384; 34 S. C., 257; 17 Ency., 343.

April 22, 1908. The opinion of the Court was delivered by

MR. JUSTICE JONES. The original petition in this proceeding was filed in the probate court of Spartanburg County by L. Addie Gaston, as administratrix of the estate of T. P. Gaston, deceased, and in her own right, for the sale of lands belonging to the said estate in aid of personal assets and for the distribution of the surplus according to the statute of distributions after payment of the costs of the action.

Thereafter, defendant, M. A. Boggs, qualified before the court of probate of Spartanburg County as administrator

of the estate of Mrs. Mary Gaston, deceased, wife of peti-
tioner's intestate, T. P. Gaston, and then the petition of L.
Addie Gaston was amended so as to allege this fact and also
to ask that Mrs. Gaston's creditors be protected out of her
portion of the proceeds of T. P. Gaston's land.

Defendants, other than the administrator, answered,
alleging there was no necessity to sell the land in aid of
assets, but in other respects admitted the allegations of the
petition.

Defendant M. A. Boggs, as administrator, answered sepa-
rately, alleging that his intestate left only a small personal
estate, that a claim for funeral expenses had been approved
by him, and a claim of plaintiff, L. Addie Gaston, for the
sum of $1,000 had been made for services rendered in nurs-
ing his intestate, Mary Gaston, which claim had not been
allowed, and he asked the Court for such relief as seemed
proper.

The principal controversy before the probate court was
whether the claim of Miss Addie L. Gaston for the sum of
$2,400 should be allowed.

The probate judge held that under the pleadings, he had
jurisdiction not only to establish claims against the estate
of T. P. Gaston but also the claims against the estate of Mrs.
Mary Gaston in this proceeding to sell the lands of T. P.
Gaston, in which Mrs. Gaston's estate had an interest after
payment of the debts of the said T. P. Gaston.

The probate court allowed the claim for the sum of two
thousand dollars and rendered judgment thereon. Both sides
appealed to the Circuit Court. The Court raised the amount
of the claim from two thousand to two thousand four hun-
dred dollars, but otherwise affirmed the judgment of the
probate court.

1. The first question we notice is whether the probate
court had jurisdiction to pass upon the claim of Miss L.
Addie Gaston under the pleadings. The probate
court undoubtedly had jurisdiction to ascertain the
claim against the estate of T. P. Gaston, petitioner's

intestate, and his determination thereof is binding on the
parties in the absence of fraud. *Dyson* v. *Jones,* 65 S. C.,
308.

As we construe it, the answer of defendant, M. A. Boggs,
administrator, seeks affirmative relief and is in legal effect
a petition to sell the interest of Mrs. Gaston in the land of
her husband, T. P. Gaston, in aid of the personal assets of
her estate, which are small, and to pay the debts against her
estate. Such was the construction placed upon the plead-
ings by the parties themselves before the probate court.
Hence, under the answer, the Court would have the same
jurisdiction to sell the interest of Mrs. Mary Gaston in the
lands in question, in the aid of assets and to establish claims
against said estate as it had under the petition in regard to
the estate of T. P. Gaston.

2. The Court having jurisdiction, the next question is
whether the Circuit Court erred in giving judgment for
$2,400 on the claim of petitioner against the estate of Mrs.
Mary Gaston.

It appears that T. P. Gaston died in the year 1897, leav-
ing surviving him his widow, Mary. Gaston, and several
children by a former marriage, among whom was the peti-
tioner. The widow, Mary Gaston, and L. Addie
Gaston resided at the old home alone for more than
eight years, until the death of Mary Gaston in the
year 1905, and it was during this period that the services
claimed for nursing were rendered. We are, therefore,
first to consider whether there was evidence of a contract
to compensate for said services.

The rule of law on this subject is declared in the case
of *ex parte Aycock,* 34 S. C., 255, 257, 13 S. E., 450, in
this language: "Where a child renders service to his
parents the presumption is that such service was rendered
in obedience to the prompting of natural affection, and not
with a view to compensation; but that such presumption
may be rebutted by positive and direct evidence that such

is not the fact, and that mere loose declarations on the part of the parent that the child ought to be paid, or that he intended or wished him to be paid, will not be sufficient to rebut the presumption.    It must appear, either that there was an express agreement between the parties providing for specific or reasonable compensation, or that the circumstances should show clearly that the parent had not only intended to pay something, but had assumed a legal obligation to do so."

The same rule applies when the claim for service is by a step-daughter against her step-mother, living together under the circumstances disclosed in this case.

In the case of *Wessinger* v. *Roberts,* 67 S. C., 240, 245, 45 S. E., 171, this Court said: "This intention and legal obligation need not be proved by an express promise, but may be gathered from all that the parties said and did relating to the services."

Applying this rule, we are satisfied, after reading the testimony, that the services in this case were rendered and received with the expectation by both parties that compensation would be made out of the estate of Mrs. Mary Gaston.

There being evidence of an implied contract to compensate for the services rendered, the next inquiry is as to the value of such services.    The testimony on this subject was practically all one way.    Numerous witnesses in the neighborhood where the services were rendered and familiar with the circumstances agreed that the services, covering a period of eight years, were worth not less than twenty-five dollars per month.    While we might have been better satisfied with a smaller judgment, there is nothing in the record which would justify us in overthrowing the conclusion of the circuit judge, as it can not be said that his finding is against the preponderance of the evidence.

3. We next consider the claims presented against the estate of T. P. Gaston, which were allowed, and to which

exceptions have been taken raising the question that they are barred by the statute of limitations.

(1) The claim allowed O. L. Gaston on the Tarver note for the sum of one hundred and forty-five and 52-100 dollars. The note, not under seal, was given by T. P. Gaston February 20, 1896, for the sum of $80, with interest from date at 8 per cent., and was made payable to R. R. Tarver, on November 5, 1896. It was taken by O. L. Gaston June 17, 1899, more than a year after the death of T. P. Gaston, which occurred some time during the year 1897, and more than six years before the commencement of this action, which was begun within one year after the grant of the letters of administration on the estate of T. P. Gaston.

(2) The claim allowed O. L. Gaston on the Mary J. Gaston note for the sum of eight hundred and thirty-six and 12-100 dollars. This was a promissory note given by T. P. Gaston February 21, 1897, for $497.22, payable one day after date to M. J. Gaston, with interest from date at 7 per cent, and provided for attorney's fees for collection in case of suit thereon. The note was taken up by O. L. Gaston April 13, 1900, more than two years after the death of T. P. Gaston, and within six years before the commencement of this action, which, as stated, was begun within one year after the grant of letters of administration on the estate of T. P. Gaston.

O. L. Gaston contends that his father in his lifetime requested him and his brother J. N. Gaston to take up his (T. P. Gaston's) notes, and that it was his intention for them to be reimbursed out of his estate for any money they had paid out for him or would pay out for his benefit in the future.

E. B. Gaston testified that he heard his father, T. P. Gaston, say in January, 1893, in his presence and in the presence of W. D. Gaston, O. L. Gaston, J. N. Gaston and A. L. Gaston, brothers, and T. J. Wood, brother-in-law, of

the witness: "That he wanted O. L. Gaston and J. N. Gaston compensated and reimbursed for the money they had advanced to or paid out for him; that he had given a note or notes for the money they then had paid out for or advanced to him; that he expected them to help him in the future, and for what they paid out for him in the future, as well as for what they had then paid out, he wanted them repaid out of his estate after he was dead and gone." O. L. Gaston and T. J. Wood testified substantially to the same effect as to T. P. Gaston's statement.

The testimony of O. L. Gaston and E. B. Gaston was not objected to at the hearing in the probate court under Section 400 of the Code, nor do the exceptions raise this objection; but if their testimony be considered as obnoxious to said section, the testimony of T. J. Wood, which does not fall within the inhibition of Section 400, is strong enough to support a promise on the part of T. P. Gaston that O. L. Gaston and J. N. Gaston should be reimbursed out of his estate for moneys paid by them for his benefit either before or after the promise was made, provided the said payments were made during the lifetime of their father. Power not coupled with an interest is limited to the lifetime of the donor. *Hunt* v. *Rousmanier's Administrators,* 8 Wheat., 202; *Johnson* v. *Johnson,* 27 S. C., 316, 3 S. E., 606.

As to these notes, therefore, O. L. Gaston has no higher right than as assignee of the same; and if the statute of limitations would bar them, if presented by the assignor, they would be barred in his hands as assignee.

In this view, are the claims barred? We think not. It is well settled that as a general rule, when the currency of the statute has once commenced, nothing can stop it except some positive statutory requirement. *Shubrick* v. *Adams,* 20 S. C., 52. One of these requirements is found in Section 2858, Code of 1902, which prohibits suits against administrators or executors for twelve months after death of intestate or testator, which is construed to

give the creditor twelve months in addition to the statutory period. *Moore* v. *Smith*, 29 S. C., 257, S. E., 485.

Section 123 of the Code of Procedure provides: "* * * If a person against whom an action may be brought die before the expiration of the time limited for the commencement thereof, and the cause of action survive, an action may be commenced against his executors or administrators after the expiration of that time, and within one year after the issuing of letters testamentary or of administration."

In the case of *Strain* v. *Babb,* 30 S. C., 345, 9 S. E., 271, the Court held that this section applies only to those cases where no administration is taken out until after the expiration of the statutory period, the statute having commenced in the lifetime of the decedent. See also *Fogette* v. *Gaffney,* 33 S. C., 312, 12 S. E., 260.

4. As to the claim of O. L. Gaston in the sum of $177.50, account for expenses from Texas to see his father in 1893, and claim of J. N. Gaston for like expenses in the sum of $287.50, which were also allowed. There was some competent testimony (the testimony of T. J. Wood) that T. P. Gaston told his sons, J. N. Gaston and O. L. Gaston, that he wanted them to be paid their expenses from Texas on their visit to him, made at his request in January, 1893. As this expense was incurred by them during the lifetime of T. P. Gaston, it is supported by his said promise that they should be reimbursed at the settlement of his estate.

The exceptions are overruled and the judgment of the Circuit Court is affirmed.