mission, if he was the efficient cause of pending negotiations being brought to a successful issue, even though he may not have brought the parties together in the first instance.

Counsel for appellant argued at length that the trial judge erred in his qualified affirmance of certain points. We see no error in any of the qualifying statements. They were intended to aid the jury in properly applying the propositions set forth in the points, and they were all consistent with the theory that plaintiff could recover only in case it had been shown that his agency was the procuring cause of the sale.

The assignments of error are overruled, and the judgment is affirmed.

---

## Blick, Appellant, *v.* Cockins.

*Trusts and trustees—Trustee ex maleficio—Decedents' estates—Bank account in name of husband and wife—Rights of survivor—Property purchased from joint funds—Mortgages—Interest—Apportionment.*

1. Where a husband and wife have bank accounts in their joint names "subject to the order of either or survivor" and moneys are deposited by each of them, or entirely by the wife, such deposit amounts to a gift to the husband and wife jointly, with the right of survivorship, and on the death of the wife the amount on deposit becomes the sole property of the husband.

2. In such case bonds purchased during the lifetime of the wife with funds so deposited became on her death the sole property of the husband, but a bond purchased by the wife by checks upon one of her separate accounts is the property of the wife, although it was understood between the husband and wife that it was to be their common property, in the absence of some act of the wife showing that the ownership of the bond was other than in herself.

3. Where a husband who is given a life estate in his wife's property by her will collects a payment of interest on a mortgage which became due after her death, but a part of which was earned before her death, he was properly held trustee ex maleficio as to the interest accrued prior to her death.

Argued Oct. 19, 1915.  Appeal, No. 228, Oct. T., 1915, by plaintiff, from decree of C. P. Allegheny Co., Oct. T., 1909, No. 1139, in case of Adelaide Blick and Horace J. Miller v. James M. Cockins.  Before MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ.  Affirmed.

Bill in equity to declare a trust ex maleficio.

From the record it appeared that Marianna M. Cockins, wife of the appellee died on March 6, 1907, domiciled in the State of Maryland, where the principal administration of her estate was had.  After her estate had been settled in that state, her husband, James M. Cockins, was declared in this State to be a trustee ex maleficio of her estate, in Blick v. Cockins, 234 Pa. 261, and The Commonwealth Trust Company of Pittsburgh was appointed trustee thereof.  Sequestration proceedings were instituted in order to compel the appellee to turn over the assets of his wife's estate to the trust company, and exceptions were filed by the plaintiffs to defendant's petition for discharge from said proceedings, on the ground that the entire estate had not as yet been turned over to the trustee.  The lower court discharged the defendant from the writ of attachment and writ of sequestration so far as the accumulation of income was concerned on the ground that defendant was endeavoring in good faith to comply with the decree and was not in contempt, which order was affirmed by the Supreme Court in Blick v. Cockins, 247 Pa. 186.  The case was then brought before the lower court for hearing on the exceptions involving the title to certain property.

Further facts appear in the following opinion by SHAFER, P. J.:

The parties have agreed as to most of the property in possession of James M. Cockins.  An order has been made in relation to it, reserving certain matters as to which they were not agreed.  By further agreement between the parties the matters in controversy have been reduced to the following items: The ownership of five

bonds, of balance in two banks, of certain jewelry, of a lot in California, and of the interest on mortgages collected by Cockins as executor of his wife, part of which was earned before her death. From the evidence taken, we find the facts in regard to the ownership of these items to be as follows:

(1) The bank balances in question were balances of accounts with "J. M. Cockins and Marianna M. Cockins, subject to the order of either or survivor." Moneys were deposited in these accounts by each of them, most of it perhaps by the wife. We are of opinion, however, that this makes no difference, and even if all by the wife it would now belong to the survivor. She had a right had she chosen to do so, to give property over to herself and husband as joint owners, and the deposit of it in this way had that effect. We find, therefore, that these deposits belong to James M. Cockins.

(2) Four of the bonds in question, namely, two bonds for $1,000.00 each of the City and Suburban Railroad, and two of the Wilmington and Weldon Railroad Company for $1,000.00 were purchased by moneys drawn out by the parties from the accounts above stated, and were intended to be held by the parties in the same way, that is, as joint owners with survivorship. The bonds were not registered in any manner whatever. We are of opinion that having been purchased with funds which had been so deposited they now belong to James M. Cockins as the money would if it had not been drawn from the bank.

(3) A fifth bond for $1,000.00 of the Carolina Central R. R. Co. was not purchased by checks upon the joint account, but by Mrs. Cockins herself. The testimony in regard to this bond is that while it was bought with the money of Mrs. Cockins it was left unregistered for the same reason, and as the witness said "it was understood that these bonds were our common property." We are of opinion that the title to this bond is in far different condition to that of the four above referred to, and that

the mere understanding or intention of Mrs. Cockins without any act which would show the ownership of the bond was other than in herself is not sufficient to give her husband any title. We find, therefore, that this bond belonged to Mrs. Marianna Cockins.

(4) It appears from the evidence that J. M. Cockins collected, after his wife's death, interest on mortgages which became due after her death, a part of which, however, was earned before her death. As interest accrues *dedie in diem* it is unlike rents and like charges apportionable at common law. We are of opinion, therefore, that these sums received as interest are apportionable.

(5) Mrs. Cockins was at the time of her death the owner of certain jewelry, the items of which are as follows: one sapphire diamond ring, one 3-stone diamond ring, one princess ring, one brooch with cluster of diamonds, one small gold watch. As we understand, it is not claimed by the plaintiff that the defendant is not entitled to maintain possession of this jewelry for his lifetime.

(6) As to the lot in California concerning which a question was raised, the evidence shows that the same belonged to Mr. Cockins.

A decree was entered directing the transfer by Cockins to the trustee of certain properties mentioned in the opinion as belonging to the estate of Mrs. Cockins and that certain other property be retained by himself as his own property, except the jewelry, which was to be retained by him during his lifetime. Plaintiffs appealed.

*Errors assigned* were the decree of the court and in dismissing exceptions to various findings of fact.

*J. R. Miller,* of *Miller and Arensberg,* with him *Patterson Crawford* and *Joseph N. Ulman,* for appellants.

*Samuel S. Mehard,* with him *Harvey A. Miller,* for appellee.

PER CURIAM, January 3, 1916:

The decree is affirmed on the opinion of the learned president judge of the Common Pleas, filed June 16, 1915.

---

# O'Kane, Appellant, *v.* Murray.

*Mechanics' liens—Agreement of sale—Improvements ordered by intended purchaser—Mechanics' Lien Act of June 4, 1901, P. L. 431—Notice—Acceptance by attorney—Fraud—Practice, C. P.*

1. Unless a claimant brings his case within Section 4, of the Mechanics' Lien Act of June 4, 1901, P. L. 431, making liable an owner who shall suffer or permit any person, acting as if he were the owner, to make a contract for which a claim can be filed, without objecting thereto at the time, the lien attaches only to the interest or estate in the premises of the person for whom the building is erected.

2. Compliance with Section 21 of such act, requiring the claimant within one month after the filing of the claim to serve a notice upon the owner of the fact of the filing of the same, and to file an affidavit setting forth the fact and manner of such service, is a prerequisite to the validity of the lien. The acceptance of service by the attorney of a defendant is insufficient.

3. In a proceeding on a scire facias sur mechanics' lien it appeared that one of the defendants had entered into an agreement with the other for the sale of the former's house and lot to the latter at a stipulated price, a small payment being made at the time of the agreement, the delivery of the deed and payment of the balance to take place five months later; that a month later plaintiff entered into an agreement with the purchaser to provide all materials and perform the work of remodeling the building; that the balance of the purchase-money of the property was not paid when due and the sale was not completed at that time, and thereafter the owner leased the property to the intended purchaser with an option to purchase. After the completion of the work plaintiff filed a mechanics' lien, making the owner and intended purchaser parties defendant. No notice of the filing of the claim was given to the intended purchaser himself, but notice was accepted by his attorneys. It appeared that the owner frequently visited the premises during the progress of the improvements. *Held,* the lower court did not err in giving binding instructions for the