## 11195

### SMITH v. PLANTERS' SAVINGS BANK

#### (117 S. E., 312)

1. BANKS AND BANKING—BANK NOT PROTECTED BY PAYING DEPOSIT TO ALTERNATE PAYEE AFTER DEPOSITOR'S DEATH.—Where owner of money deposited it in a bank in the name of himself and another, and certificate was made payable at maturity to either, the right of the other to withdraw the money was a mere power of attorney revocable by death of the owner.

2. PRINCIPAL AND AGENT—POWER NOT COUPLED WITH INTEREST LIMITED TO DONOR'S LIFETIME.—A power not coupled with an interest is limited to donor's lifetime.

Before SEASE, J., Spartanburg, August, 1922. Affirmed.

Action by W. McClure Smith as administrator of W. A. Bright, deceased, against Planters' Savings Bank. Judgment for plaintiff and defendant appeals.

*Messrs. Carlisle & Carlisle,* for appellant, cite: *Certificate of deposit is, in effect, promissory note of Banks:* 103 S. C., 266; 45 S. C., 563; 100 Va., 306; 110 Va., 229; 192 U. S., 138. *Note payable to two payees in the alternative may be paid to either:* Neg. Inst. Law, Sec. 1, Subd. 8; 151 Id., 178; 74 Kan., 736.

*Messrs. Lyles, Daniel &. Drummond,* for respondent, cite: *Certificate of deposit payable to one of two payees named cannot be paid to the surviving payee after notice of the death of the other payee:* 107 S. C., 369; 63 Md., 81; Magee, Banks and Banking (2d Ed.), 378; 27 S. C., 309.

April 21, 1923.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The agreed facts are briefly as follows:

"The Planters' Savings Bank, the defendant herein, on February 5, 1920, received on deposit from W. A. Bright the sum of $3,550.00, for which it issued a certificate of deposit set out above. W. A. Bright died intestate in June, 1920, and on August 13th of the same year the defendant paid the amount of the certificate to J. G. Bright upon his indorsement, knowing at the time that W. A. Bright was dead. Demand has been made upon defendant for the payment of the certificate, which demand has been refused. It is also admitted that, so far as this case is concerned, there was no gift shown from W. A. Bright to J. G. Bright, either *in praesenti* or by way of *donatio causa mortis."*

The certificate of deposit reads:

"Planters' Savings Bank, Greer, S. C., February 5th, 1920. No. 2531. This is to certify that W. A. Bright or J. G. Bright have deposited in this bank thirty-five hundred and fifty dollars ($3,550.00), payable to either order six months after date, with interest from date at the rate of 5½ per cent. per annum, on the return of this certificate properly indorsed. Interest after maturity at the rate of 4 per cent. per annum, unless renewed. [Signed] R. M. Hughes, Vice President Cashier."

The only question in the case is: Was the bank authorized to pay the certificate of deposit to J. G. Bright after the death of W. A. Bright?

It is admitted that the money belonged to W. A. Bright, and after his death it was paid to J. G. Bright. Under these circumstances there was a mere power of attorney to withdraw the money. The death of the principal revokes a power of attorney.

"Power not coupled with an interest is limited to the lifetime of the donor." *Gaston v. Gaston,* 80 S. C., 157; 61 S. E., 393.

His Honor, Judge Sease, was right when he held that *Sawyer v. Mabus,* 107 S. C., 369; 92 S. E., 1029, is controlling in this case.

The judgment appealed from is affirmed.

MR. JUSTICE WATTS concurs.

MR. CHIEF JUSTICE GARY did not sit.

MR. JUSTICE MARION (concurring): The admission "that the money deposited was the money of W. A. Bright, and that the bank, at the time of taking the deposit, knew it was his," and the absence of any contention that there was a transfer or delivery of the certificate for value during the life of W. A. Bright, would seem clearly to charge the bank with knowledge that J. G. Bright, the alternative payee, had no enforceable claim to the deposit for the reasons: (1) That the supposed agreement as to him was without valuable consideration; (2) that the deposit was not a gift, the depositor retaining the right himself to withdraw it; (3) that it was not a trust in that no present right was transferred; and (4) that it was not a valid testamentary disposition in that it lacked the essentials of a will. L. R. A., 1917C, 550; *Sawyer v. Mabus,* 107 S. C., 369; 92 S. E., 1029. If J. G. Bright, the alternative payee, had no enforceable right to compel payment, did the bank have a legal right to pay W. A. Bright's money after his death to one who had no title to or interest in the fund, by virtue of its agreement, evidenced by the certificate, to pay to either of the two named payees?

While the acceptance of a deposit creates the relationship of debtor and creditor, there is always the superadded obligation on the bank's part to ascertain that payment is made to the proper person.  7 C. J., 650, § 343; *Wolfe v. Bank of Anderson* (S. C.), 116 S. E., 451, October term, 1922.  The bank's contract to pay W. A. Bright's money to W. A. Bright or to J. G. Bright was of necessity predicated upon authority conferred by W. A. Bright so to pay.  That authority conferred no power, coupled with an interest, upon J. G. Bright, since admittedly he had no interest in the fund itself (*Johnson v. Johnson,* 27 S. C., 309; 3 S. E., 606; 13 Am. St. Rep., 636), nor did it confer a power, coupled with an interest, upon the bank, for the same reason.  When W. A. Bright died, the authority by virtue of which it had agreed to pay his money to another died with him.  Such seems to have been the conclusion of the Maryland Court in a practically identical case.  *Second National Bank of Baltimore v. Wrightson,* 63 Md., 81.  Let us assume that the money here involved had been deposited in the name of the owner, W. A. Bright, and that prior to his death he had given the bank written authority to pay it to J. G. Bright upon or after his (the owner's) death.  Upon compliance with that written order, would the bank have been absolved from liability to the legal representatives of W. A. Bright's estate? Clearly not, I think, for the obvious reason that it would then have paid out the money to one not clothed in due form of law with authority to collect and administer the decedent's estate.    See *Sullivan v. Sullivan,* 161 N. Y., 554; 56 N. E., 116.  I cannot perceive how the certificate of deposit, under the admitted facts of the case at bar, amounted to more than an agreement on the bank's part to comply with the verbal authority conferred by W. A. Bright to pay his money to another who had no enforceable interest in it.  If so, the bank's mere correlative agreement cannot of itself keep the power so conferred alive; it died with the donor.

For the reasons stated, I concur in the opinion of MR. JUSTICE FRASER.

MR. JUSTICE COTHRAN (dissenting): The leading opinion announces and sustains two propositions, neither of which, in my opinion, is a correct statement of the law:

(1) That where the owner of money deposits it in a bank in the name of himself and another, and the certificate is made payable at maturity to the order of either, the issuing of the certificate creates a "power" in the alternative payee to withdraw the funds; that this power can be exercised only during the lifetime of the depositor; that the death of the depositor revokes the "power"; and that the bank thereafter paying the certificate to the alternative payee is required to pay it again to the administrator of the depositor.

(2) That a certificate of deposit issued under the circumstances stated confers no enforceable right upon the alternative payee, and that for that reason the bank, in honoring his demand for the money, acts without authority and is required to pay it again to the administrator of the depositor.

It will thus be seen that the right of the administrator of the depositor to recover from the bank the amount so paid to the alternative payee is based upon both of these propositions, neither of which, in my opinion, is tenable.

Attention is called *in limine* to the fact that the present controversy is not between the depositor or his administrator and the alternative payee, but between the depositor or his administrator and the bank which has paid out the money to the alternative payee and in apparent compliance with the terms of the certificate. It must be evident, therefore, that the obligations and rights of the parties to the controversy must be determined by the contract relations which existed between them, the depositor and the bank, and not between others, the depositor and the alternative payee.

Now, considering the two propositions above stated, upon both of which the right of the administrator to recover from the bank is based:

As to the first proposition the facts were these: W. A. Bright owned $3,550.00 in cash. He wished to deposit it in the savings department of the bank at interest. Of course, at his suggestion, the certificate was made out in the name of himself and J. G. Bright, and made payable at maturity to either. He thereby vested J. G. Bright with a certain right or interest in that fund, and if after maturity, during the lifetime of W. A. Bright, J. G. Bright had presented the certificate properly indorsed by him, the bank could not have refused payment to him. The inability of J. G. Bright to demand payment after the death of W. A. Bright is placed in the leading opinion upon the ground that the privilege extended to J. G. Bright by the terms of the certificate of deposit was a "mere power of. attorney," revoked by the death of W. A. Bright. I do not think that it has the faintest resemblance to a "power of attorney," which involves the relation of principal and agent, where one person is authorized in writing to act in the name of another, dealing with the rights of such other person. The certificate did not assume to confer upon J. G. Bright the power to act in the matter in the name of W. A. Bright. There is no such conception in the certificate. It contemplates that if J. G. Bright acted at all, it would be in his personal right, and in no sense in a representative capacity. As a matter of fact, when he did act, he presented the certificate indorsed in his own name, drew out the money, and appropriated it; he acted under what he supposed was a personal right, a vested interest conferred upon him by the certificate. Whether or not he had a legal right to do so is aside from the immediate question.

That he did not act under a "power of attorney" seems to me perfectly clear. Nor can it be said, I think, that he acted under a "power" in any sense of the word. A "power"

is an authority enabling one person to dispose of the interest which is vested in another. 26 R. C. L., 773. Note that it is "to dispose of it," not to acquire. If the instrument purports to enable him to acquire an interest in the subject of negotiation, it vests him with an estate or interest in it, which is the antithesis of the act of disposition. 31 Cyc., 1038:

"A power is not an estate or interest in lands; unexercised, it is an incumbrance; and when exercised the act performed by virtue of it is considered and construed as done by the donor of the power."

See *Root v. Stuyvesant,* 18 Wend. (N. Y.), 257.

But, assuming that it was a "power," it is conceded in the very authority cited in the leading opinion that, where the power is coupled with an interest, it is not revoked by the donor's death. It will scarcely be contended that the power which enabled J. G. Bright to draw out the money was not coupled with an interest. I think it is clear, therefore, that the conclusion cannot be sustained upon the doctrine of the revocation by death of a power.

As to the second proposition: The declaration in the leading opinion that the case of *Sawyer v. Mabus,* 107 S. C., 369; 92 S. E., 1029, is controlling, is equivalent to holding that under the facts of the case at bar J. G. Bright did not have an enforceable right to the fund, and that for that reason the bank was not authorized under the contract with W. A. Bright to pay the money to J. G. Bright—a *non sequitur,* as I think.

I have no criticism to make of the decision in the *Sawyer v. Mabus Case,* and if it had appeared in the case at bar that J. G. Bright was not entitled to enforce his interest acquired by gift, trust, or contract for valuable consideration, so far as he is concerned, the case referred to would be controlling. My objection to the proposition under consideration is that the effect of this decision is that the justification of the bank in paying out the fund to the al-

ternative payee, according to the terms of the certificate, is made to depend, not upon the validity and binding force of the contract entered into between the depositor and the bank, as evidenced by the certificate of deposit, but upon the legal enforceability of the alternative payee's claim to the fund on deposit.

In other words, the rights of the bank, under its contract with W. A. Bright, are made to depend upon the rights of J. G. Bright under an entirely distinct contract or arrangement with W. A. Bright.

It is a novel proposition to me that the rights of a party under a specific contract are determinable by the rights of another party under an entirely distinct and separate contract.

It appears to me that the controversy, if it exists, between W. A. Bright or hi sadministrator and J. G. Bright, touching the right to the fund, is one thing, and that between W. A. Bright or his administrator and the bank touching the payment of the certificate is an entirely different one.

Whatever arrangement, agreement, or promise existed between W. A. Bright and J .G. Bright prior to the actual deposit of the money by W. A. Bright; and whether or not J. G. Bright was thereby vested with an enforceable right to the fund, are matters entirely wide of the mark. The questions are whether or not there was a valid contract between the depositor and the bank, and whether or not the bank has complied with its obligations under that contract.

It may be conceded that nothing which preceded the issuing of the certificate of deposit in the nature of a promise or contract on the part of W. A. Bright and nothing in the terms of the certificate conferred upon J. G. Bright an enforceable right to the fund on deposit, and yet it by no means follows that the contract between W. A. Bright and the bank, an entirely separate and distinct contract, was thereby annihilated.

Whether or not J. G. Bright's right to the fund was supported by a contract with W. A. Bright upon a valuable consideration, or his right to the fund was otherwise enforceable, was not a matter which the bank was required to investigate; it would have been an impertinence on the part of the bank to have done so.   By its certificate of deposit indorsed by W. A. Bright, the bank assumed the relation of debtor to both W. A. Bright and J. G. Bright, and their relations with each other interested it not.

In *Folk v. Moore,* 103 S. C., 266; 88 S. E., 18, quoting from the syllabus, it is held:

"A certificate of deposit in writing containing an unconditional promise to pay absolutely a certain sum of money to the order of the payee at a definite time is, in effect, a promissory note."

In *Bank v. Massey,* 192 U. S., 138; 24 Sup. Ct., 199; 48 L. Ed., 380, it is said:

"A deposit of money upon general account with a bank creates the relation of debtor and creditor. * * * It creates an ordinary debt, not a privilege or right of a fiduciary character. * * * 'The deposit of money by a customer with his banker is one of loan, with the superadded obligation that the money is to be paid, when demanded, by a check.' "

If the justification of the bank in paying the fund to J. G. Bright depended upon an enforceable contract between W. A. Bright and J. G. Bright, that condition would have prevailed before as well as after the death of W. A. Bright.

Here, evidently at the request of W. A. Bright, the certificate was made out in the names of "W. A. Bright or J. G. Bright," and was payable upon the order of either, six months after date.   The bank obligated itself, as a debtor of these parties, to pay as directed.   It had the right to assume that satisfactory and valid legal grounds existed in the relations of these parties to justify that arrangement.

If it was a valid obligation on the part of the bank to pay as directed, how is it conceivable that the bank should suffer by a compliance therewith?

The money belonged to W. A. Bright.   He had the right to dictate the terms upon which the certificate of deposit should be issued.   He dictated those terms, and the bank issued the certificate accordingly, payable either to him or to J. G. Bright.   That this constituted a valid contract between W. A. Bright and the bank by which each was bound, regardless of any legal claim that J. G. Bright may or may not have had under some previous agreement with W. A. Bright or under the terms of the certificate, does not seem to me open to argument.

I think that this is clear under a consideration of the situation if W. A. Bright had survived the maturity of the certificate.   Even then J. G. Bright would have had no right to come into Court upon a refusal by the bank to honor his demand for the money, unless he could have shown a gift, or trust, or an enforceable contract; and yet it will not be contended that the bank should be required to pay again the money if it had acted in conformity with its contract with W. A. Bright in paying it to J. G. Bright.   The justification of the bank in paying the money to J. G. Bright would have been referred to its contract with W. A. Bright, and not to the existence of an enforceable contract between W. A. Bright and J. G. Bright.   If W. A. Bright, alive, could not have questioned the right of the bank to pay to J. G. Bright, how can his administrator do so?

In L. R. A. 1917C, 550, there is an elaborate note which is confined to the right of the alternative payee (i. e., the person other than the owner of the fund) where there is no enforceable contract between him and the actual depositor.   It is there concluded that the alternative payee has no enforceable claim upon the grounds: (1) the supposed agreement is without valuable consideration; (2) the deposit is not a gift for the depositor retains the right him-

self to withdraw it; (3) it is not a trust practically for the same reason that it is not a gift, no present right is transferred; (4) it is not a testamentary disposition, for it lacks the essentials of a will.

Nowhere in the note or in extracts from several hundred cases cited is there a suggestion that the interest which the alternative payee takes is a power revoked by the death of the depositor.

Assuming that W. A. Bright had the power to revoke the authority which he gave to the bank by contract to pay the money to J. G. Bright, he did not do so, and imposed no limitation in the certificate as to the payment to J. G. Bright which he could so easily have done. He put it in the power of J. G. Bright, by his own unlimited contract, to collect the money after his death. If J. G. Bright was not entitled to the money, he should be required to refund it; but I do not see the justice of requiring the bank, which has paid out the money in conformity with W. A. Bright's unlimited contract, to pay it again to his administrator, when, if he were in Court demanding it under similar circumstances, he would not be heard for a moment.

While, as stated, the note in L. R. A. 1917C, is limited to controversies between the depositor or his personal representative and the alternative payee, the annotator says:

"If the contest were between the depositors and the bank, it may be true that the depositors, even the one other than the original owner, could stand on the contractual relation created by the deposit in this form, or that the bank, having paid the fund to the one other than the original owner, might defend an action by the original owner on the ground that it had complied with its contract in such payment."

The case of *Sawyer v. Mabus*, 107 S. C., 369; 92 S. E., 1029, is not at all controlling. On the contrary, it emphasizes the distinction which I have endeavored to draw, and demonstrates the fallacy of making the bank's justification

depend upon the validity or enforceability of J. G. Bright's claim to the fund.

In that case Paul Mabus had deposited certain money in the bank payable to the order of himself or Sally Mabus. After his death, the money still remaining on deposit, a suit was brought by his administrator against the bank and Sally Mabus to determine who was entitled to it. The bank had not paid out the money and the suit was really between the administrator and Sally Mabus; the bank practically occupying the position of an interpleader. The majority opinion of this Court was to the effect that, as the evidence showed that the intention of the depositor was that Sally Mabus should have the deposit at the death of the depositor, such an arrangement, being testamentary in effect, could not be enforced; that it was not a gift *in praesenti.* The Circuit decree, approved by two of the Justices, contains an admirable review of the authorities and a clear statement of the rule. The question whether or not the bank would have been justified, after the death of Mabus, in paying the money to Sally Mabus, under its contract with the depositor, was not involved and was not discussed.

For the foregoing reasons I am of opinion that the bank was entirely within its rights in paying the money to J. G. Bright, and that the judgment should be reversed.