13427

LeROY v. LANFORD *ET AL.*

(164 S. E., 634)

*Messrs. Lyles & Daniel* and *J. W. Boyd*, for appellant,

*Messrs. Nicholls, Wyche & Russell* and *Jas. F. Byrnes*, for respondents W. C. and Lizzie Lanford,

*Messrs. Lanham & Lanham* and *H. K. Osborne*, for respondent First National Bank of Woodruff,

June 13, 1932.

The opinion of the Court was delivered by Mr. Chief Justice Blease.

J. H. Thomas, of Spartanburg County, died testate, on November 3, 1929, and O. L. LeRoy and W. Carl Lanford, named as executors of his will, qualified as such. The action here, brought by LeRoy, one of the executors, against Lanford and his wife, Mrs. Lizzie Lanford, and First National Bank of Woodruff, related to a deposit of money in the defendant bank, evidenced by a certificate of deposit in the name of Thomas. Lanford, one of the executors, was made a party defendant; the plaintiff, LeRoy, as executor, alone bringing the action, he alleging that the interest of his co-executor was in direct conflict with the interest of the estate.

The facts, on which the action was based, as alleged in the complaint, briefy stated, were as follows: ·

The testator, Thomas, at the time of his death, had on deposit in the ʾdefendant bank the sum of $5,550.90, for which the bank had issued its receipt in the form of a certificate, reading as follows:

"First National Bank

"No. 4341

"Woodruff, S. C., Oct. 24, 1929.

"This is to certify that J. H. Thomas has deposited in this Bank $5,550 Dollars 90 Cents, $5,550.90, payable to his order 6 months after date with interest from date at the rate of 4 per cent. per annum, on the return of this certificate properly endorsed. This Bank may require thirty days' notice of the time when payment will be required.

"Not subject to check.

"S. G. Anderson, *Cashier.*"

There appeared on the back of the certificate, under the date of October 24, 1929, the same date of the certificate above the signature of Thomas, witnessed by Anderson, the cashier of the bank, the following writing: "In case of my death, pay this certificate to W. Carl Lanford and Lizzie Lanford."

After the death of Thomas, some time during the month in which he died, when all the defendants had knowledge of

his death, and with information that the bank deposit was an asset of his estate and should pass under his will, the defendants W. Carl Lanford and Lizzie Lanford signed their names on the back of the certificate of deposit, the defendant bank marked the certificate paid, and delivered the Lanfords the amount of deposit represented thereby; that the money was unlawfully and wrongfully paid by the bank to the Lanfords and the Lanfords unlawfully and wrongfully received the same; that the concurrent act of all of the defendants resulted in depriving the testator's estate, and the beneficiaries under his will, of property rightfully belonging to the estate; that demand had been made by the plaintiff on the defendants for the restoration of the amount of money, which demand had been refused, and the plaintiff was entitled to judgment against the defendants for the sum of the deposit and interest thereon.

A copy of the will of the testator was attached to, and made a part of, the complaint. The will, bearing date November 22, 1924, was witnessed by Anderson, the cashier of the bank. Therein the testator made bequests and devises to many persons, among them the defendant Mrs. Lanford.

The Lanfords, in their answer, alleged, substantially, these matters: .

That the testator, Thomas, had resided in their home for six years prior to his death, and for more than a year preceding his death had suffered from an incurable disease, which confined him to his bed for months; that on or about October 23, 1929, the cashier of the defendant bank advised Thomas that a certificate of deposit in the bank, held by Thomas, had matured, and inquired if Thomas wished to renew it; that Thomas advised the bank cashier that he wanted the defendants W. Carl Lanford and Lizzie Lanford to have the amount of money represented by the certificate, and wished it so fixed that they could get the money at any time they wanted it; accordingly, the cashier, Anderson, prepared the certificate of deposit, set forth in the complaint, wrote the indorsement appearing on its back, which

was signed by Thomas; that after the indorsement was signed, Thomas again advised Anderson that he wanted to be certain that W. C. Lanford and Lizzie Lanford could get the money at any time, and Thomas was advised by the cashier of the bank that the bank would pay the money, represented by the certificate, to the Lanfords at any time they desired it, but that, in such case, they would lose the interest; Thomas informed the cashier of the bank even if they did lose the interest, he wanted it understood that the bank would pay the money to the Lanfords at any time they demanded payment, since he (Thomas) might linger and they might need the money before his death; the cashier agreed to pay the money to the Lanfords at any time they demanded, and Thomas directed the cashier to deliver the certificate of deposit to the Lanfords; on October 25, 1929, the cashier delivered the certificate to the Lanfords, informing them that he did so at the direction of Thomas; that later, on the same day of the delivery, Thomas asked the Lanfords if the certificate had been delivered to them, stating that he had instructed Anderson so to do; that the certificate of deposit was delivered to the Lanfords during the lifetime of Thomas, that it was retained by them as their property until the death of Thomas, and thereafter the Lanfords presented the same to the bank and received in exchange therefor the principal sum represented by the certificate; that at the time of the gift to the Lanfords by Thomas, the donor was of sound mind, but was in imminent danger of death, and as the result of the illness then suffered by him, he died within ten days after the delivery of the certificate; that the certificate of deposit, and the money represented thereby, were the property of the Lanfords, and not in any way the property of the estate of Thomas.

In its answer, the defendant bank alleged that the certificate of deposit involved in the suit, and the money represented thereby, was a gift *causa mortis* from Thomas to the Lanfords, complying with all the provisions of the law

as to such gifts. The bank further alleged that if the money, and the certificate representing the same, was not a gift *causa mortis,* nevertheless the bank was discharged from all liability to the estate of Thomas on account of the payment of the money to the Lanfords, for the reason that payment had been made to W. Carl Lanford, one of the duly qualified executors of the last will and testament of Thomas, who had legal authority to receive the payment.

The plaintiff interposed demurrers to the answers of the defendants, and moved the Court for an order striking out the answers and for judgment in the cause on the pleadings, on grounds summarized as follows: That the answers contained admissions of the material allegations of the complaint, and did not specifically or generally deny any of such allegations; that no new matter, constituting a defense or counterclaim, was set up; that the matters set forth in the answers did not in any way constitute a defense to the plaintiff's cause of action; and that the certificate of deposit and its indorsement, as alleged in the complaint, being admitted, it followed, as a matter of law, that the money represented by the certificate was a part of the estate of Thomas, the deceased.

The demurrer of the plaintiff being overruled, and the motion for judgment being refused by the presiding Judge, Honorable G. B. Greene, the plaintiff has appealed to this Court.

The appellant has presented several exceptions, but in argument it is admitted that there is but one question to be decided, and that, stated in the language of the counsel, is this: "Is direction, written by owner on the back of a certificate of deposit in these words 'In case of my death pay this certificate to W. C. Lanford and Lizzie Lanford,' and witnessed by only one witness,—efficient to transfer the money represented by the certificate, or merely an inefficient effort to make testamentary disposition?"

Counsel for the Lanfords have not stated in precise language the question they think the Court should decide. But counsel for the respondent bank have stated three questions they regard as being involved in the cause. Their first question, practically the same as that made by the appellant, though expressed in shorter language, is this: "Can the gift to Carl and Lizzie be sustained as a *donatio causa mortis?*" And that question, and what we conceive to be the proper answer thereto, disposes of and determines the cause.

It does not appear to us to be necessary to go at length into the many authorities from our own and other jurisdictions, cited by counsel for the several parties. Much has been written in the past as to gifts *inter vivos* and gifts *causa mortis*. An interesting and enlightening article on the subject of "Gifts" is found in 28 C. J., beginning at page 617. We quote some of the things there said with reference to gifts *causa mortis:*

"A *donatio causa mortis,* literally translated, means a gift in prospect of death. It is a gift of personal property made by a party in the expectation of death, then imminent, and upon the essential condition that the property shall belong fully to the donee in case the donor dies as anticipated leaving the donee surviving him, and the gift is not in the meantime revoked, but not otherwise. Such a gift Judge Story describes as amphibious, that is between a gift *inter vivos* and a legacy. A gift *causa mortis* has some properties in common with gifts *inter vivos,* and some in common with legacies; but in its essential properties it is testamentary.
\* \* \*

"While gifts *causa mortis* are in the nature of testamentary dispositions and have several characteristics in common with legacies, they differ from the latter in many important respects. A gift *causa mortis* resembles a legacy in that it is made in contemplation of death, is ambulatory, incomplete, and revocable at the option of the donor at any time during his life. On the other hand it differs from a legacy in several

important particulars. Possession must be delivered to the donee and retained by him during the life of the donor, whereas in case of a legacy the possession remains with the testator until his decease; the claim need not be proved in a Court of Probate; the title of the donee becomes by relation complete and absolute from the time of delivery; no consent or other act on the part of the personal representative is necessary to perfect the title of the donee. It is a claim against the personal representative; a legacy is a claim from and through him. Although the donor has made a will disposing of all his personal property, a donation of this sort is good. * * *

"To constitute a valid gift *causa mortis,* the gift must be made in view of the donor's impending death, the donor must die of the disorder or peril, and there must be a delivery of the thing given. In addition to this, there must be a donor competent to make the gift, an intent on his part to do so, and an acceptance by the donee." 28 C. J., 684-687.

The decisions of many Courts, which we have examined, announce principles similar to those stated in the quotations from Corpus Juris.

In our own reports will be found several cases touching the subject of gifts *donatio causa mortis,* and these, in our opinion, sustain the holding of the trial Judge in this cause. See, generally, *Hall v. Howard's Adm'rs, Rice* (24 S. C. Law), 310, 33 Am. Dec., 115; *Priester v. Priester,* Rich. Eq. Cas. (9 S. C. Eq.), 26, Am. Dec., 191; *Brooks v. Brooks,* 12 S. C., 422; *Bennett v. Cook.* 28 S. C., 353, 6 S. E., 28, 30; *Sharpe v. Sharpe,* 105 S. C., 459, 90 S. E., 34, 35, 3 A. L. R., 891; *Sawyer v. Mabus,* 107 S. C., 369, 92 S. E., 1029.

The delivery of the certificate of deposit was a delivery of the money payable under it. *Brooks v. Brooks, supra.*

" * * * There is no doubt that a parol gift of chattels cannot be made to take effect in *futuro.* To constitute a legal gift there must be an actual or constructive delivery of pos-

session so as to confer the right of enjoyment *in praesenti.* The rule seems very plain, but there are so many kinds of personal property, and circumstances are so various, there is often no little difficulty in applying it properly.

"It has been settled that it is not necessary that there should be in all cases an actual manual delivery. The principle is stated thus: 'Property in a chattel cannot be transferred by a parol gift without delivery; but by delivery is not meant an. actual manual delivery in all cases, but any circumstances amounting to a clear demonstration of the intention of the one to transfer, and of the other to accept, and which puts it into his power, or gives him authority to take possession, is all that is necessary, and is a fact that is left to the jury.' " *Bennett v. Cook, supra.*

The *Sharpe case, supra,* is much like the present case, although it is our opinion that if there is any difference, the facts of this case are stronger in support of the gift *causa mortis* than were the facts of the *Sharpe case* upon which the Court sustained a gift of that character. There, the Court approved the following language of Mr. Justice Gage:

"If an intent may be proven beyond a reasonable doubt, the testimony here proves that the deceased intended for his wife to have this money after his death in the event of his death; all the testimony is that way, there is none *contra.* If that intention, as expressed, was in truth performed by the deceased, then the gift ought to be sustained. The Court found that the transaction was had while the deceased was of sound mind, and that it was free from fraud, and to that there is no exception. The Court also found that the transaction was had in view of the impending death of the deceased, and that the deceased died of the disorder which was then upon him; and to this there is no exception.

"The only other factor going to constitute a *donatio causa mortis* is a delivery of the thing."

The *Sawyer case,* which the appellant seems strongly to rely upon, is altogether different from the case at bar. There, the certificate of deposit was not delivered, but remained in the possession of the donor until his death. The donor, if he was a donor, only expressed a desire that his wife, who claimed the gift, should have the property at his death.

In the *Sharpe case,* Mr. Gage said: "Gifts *causa mortis* are older than the republic; and if they be satisfactorily proven, it is the duty of the Court to give effect to them."

If the facts alleged in the answers of the defendants can be sustained by the proof on a trial, the Lanfords were entitled to the money represented by the certificate of deposit. The Circuit Judge, therefore, was correct in overruling the demurrers and in refusing judgment in favor of the plaintiff on the pleadings, and his order is affirmed.

MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.