16819

HAWKINS v. THACKSTON *ET AL.*
(79 S. E. (2d) 714)

*Messrs. Leatherwood, Walker, Todd & Mann,* and *J. G. Leatherwood,* of Greenville, *for appellants,* 

*Messrs. Price & Poag,* of Greenville, *for Respondent,*

January 11, 1954.

STUKES, Justice.

The late W. C. Hawkins, a childless widower, sold his farm near the City of Greenville to Furman University, to become a part of its new campus, for which he received a large cash consideration. Very near him there lived, in the same home, his nephew, Ansel Hawkins, and his unmarried niece, Susan Hawkins. The last named is the respondent in this action. After the death of the wife of decedent about 1943, he was frequently in the home of Ansel and Susan and regularly had two meals a day there. During the first several years he did not pay board but during the last couple of years he did pay for his meals. Beginning in 1948 he was ill from time to time and intermittently a patient in the hospital at the nearby town of Travelers Rest. In October, 1950, he entered the hospital and was continuously a patient there until his death on March 28, 1951, at the age of seventy-eight. However, he was not confined to his bed until shortly before he died, being up and about the hospital and well-preserved mentally.

On February 17, 1951, at his request Mr. Hawkins was taken by Ansel and Susan in the latter's automobile to the office of Fidelity Federal Savings & Loan Association in

Greenville where he deposited his check on a Greenville bank for $10,000.00, which he had signed beforehand. For the deposit there was issued a passbook which contained the Savings Share Certificate of the Association; it recited that, quoting, "W. C. Hawkins or Miss Susan Hawkins is a member of the * * * Association and holds a Savings Share Account," in the amount of $10,000.00, dated February 17, 1951. It bore the following notation: "Always bring or mail this book with each transaction." It was explained to the depositors by an employee of the Association that either of them might draw upon the deposit; and Mr. Hawkins said to Susan on the return trip to the hospital, in the presence of Ansel, that he only wanted the interest. (There was no withdrawal.) Both signed signature cards, with their addresses and other information required by the Association. Susan had previously visited the office of the latter at her uncle's request. The passbook was first kept by decedent with his other valuable papers, loose in a traveling bag in his hospital room; Susan later furnished a lockbox in which the papers, including the passbook, were kept, and the box in the traveling bag.

The nurse who cared for the decedent at night during the last weeks of his life testified that he slept poorly and talked to her a great deal. She testified to a conversation between them to the effect that decedent said that some of his nieces visited him at the hospital who had never been to his home and he suspected that they thought he would soon die and they wanted his money; she asked if he thought any niece or nephew was more sincere than the others and he replied that he knew that if he had nothing Susan would do as much for him anyway; and the nurse suggested that he should take care of her, whereupon he said that he had, and showed her the passbook. This witness also said that Susan visited the decedent daily at the hospital.

The manager of the hospital was a great-niece of decedent. She wrote checks for him to sign for his hospital and other expenses, which he did until the week before his

death. He showed her the passbook when he returned from Greenville with it and she frequently saw it in his papers. It was at her suggestion that Susan brought the lockbox in which the papers were put. It was locked and the witness kept the key so that she could go in and out for the purpose of drawing checks. The decedent instructed her, in effect, that in case of his death, the box should be taken to a designated attorney's office. After his death the witness consulted Susan and gave her the box, but the witness kept the key and together they later went to the attorney's office and delivered the box, which contained decedent's papers, including the passbook, and the key. Decedent had two checking accounts in separate banks, one in Greenville and the other in Travelers Rest, but all of his checks, including that to the Savings & Loan Association, were drawn upon the larger, Greenville bank account.

The action was for judgment that respondent is the owner of the fund and was contested by the executor and other legatees of the will of the decedent, which was made in 1949 and by the terms of which the entire estate was given in equal shares to his nephews and nieces, of whom there are over forty. The evidence was taken before the trial court which held by order dated March 15, 1953, that respondent, as the survivor of the joint depositors, is the owner of the deposit and the interest which has since accrued upon it. The executor and other nephews, representing the legatees as a class, have appealed. The order cites the statutes which are sections 8-171 and 8-602 of the Code of 1952 which relate to joint deposits, the latter particularly in Loan Associations, and is as follows:

"When any certificate or share of stock has been issued by any building and loan association or Federal savings and loan association transacting business in this State in the names of two persons, redeemable or payable to either, or payable to or redeemable by either or the survivor, such share or certificate may be paid to or redeemed by either of such persons, whether one be living or not, and the re-

ceipt or acquittance of such association by the person so paid or by the person who redeemed such share or certificate shall be a valid and sufficient release or discharge for any and all payments, redemptions or repurchases made of such share or certificate of stock."

The reason for the conclusion of the order as stated in it is that the nature of the deposit and the provisions of the statute create a presumption that the parties intended that it should be paid to the survivor as owner, and the presumption was not rebutted by the evidence adduced here but, on the contrary, was strengthened by it.

The law applicable to the present facts, derived from a great many decisions, is outlined and discussed in 7 Am. Jur. 299 *et seq.,* Banks, sec. 425 *et seq.,* and 9 C. J. S., Banks and Banking, § 286, p. 595. A number of pertinent cases are reported and a multitude of others are digested in the following annotations: Ann. Cas. 1916D, 515; L. R. A. 1917C, 548; 48 A. L. R. 191; 66 A. L. R. 882; 103 A. L. R. 1124; and 135 A. L. R. 993. It is said by the annotator at page 1123 of 103 A. L. R., as follows:

"In view of these late decisions, some arising under such statutes and some not, it is questionable whether it may any longer be safely said that the only theories under which a transfer of title to funds originally owned by one person and deposited in an account in the names of such person and another can be sustained are theories of gift or trust. Some of the later cases seem to rely exclusively on the deposit contract between the bank, the donor, and the donee, in upholding the latter's right to a joint deposit on the depositor's death."

It may be conceded, as contended by appellants, that the transaction at hand was not a valid gift *inter vivos, Smith v. Johnson,* 223 S. C. 64, 74 S. E. (2d) 419, or *causa mortis, LeRoy v. Lanford,* 166 S. C. 221, 164 S. E. 634, for lack of one or more of the requisites of them; and it was not an effective testamentary disposition of the deposit.

Nevertheless it is clear under the evidence that it was the contractual intent of all concerned in the transaction that the survivor of the joint depositors should take the balance of the deposit remaining at the time of the death of the other, and the agreement had the sanction of the statute, although the latter is not conclusive of the rights existing between the depositors or their representatives. Of course, as recognized by the trial judge, another case of joint deposit might disclose facts which would negative the intent of survivorship which has been found here. There was effort by appellants in this case to show that the arrangement was merely for convenience, so that respondent might make withdrawals for the benefit of decedent; but the facts speak otherwise. The decedent already had two checking accounts which bore no interest and upon one of which he regularly drew to pay his expenses.

The possession of the passbook was of no significance in view of the other facts. Both depositors were entitled to possession so that of one must be presumed to have been in behalf of both. Respondent provided the lockbox in which it was kept. The case is not concerned with the rights of the parties with respect to the deposit while both lived. The issue is only as to the right of the survivor to the fund, which is upheld under the facts of this case.

Appellants urge the applicability of *Sawyer v. Mabus,* 107 S. C. 369, 92 S. E. 1029, and *Smith v. Planters' Savings Bank,* 124 S. C. 100, 117 S. E. 312. However, both of these decisions were before enactment of the statutes which have been cited; and the court in neither case gave any effect to the tripartite nature of the contract. On the other hand, the statutes were referred to (as one) with approbation in *Davis v. Davis,* 223 S. C. 182, 75 S. E. (2d) 46, a recent case which gave effect to the intention of a grantor to create the right of survivorship in land. The intention of the parties similarly prevails here. It was not a completed gift or attempted bequest of the money; that went to the Association and in place there arose the obligation of it to pay the pro-

ceeds to either Mr. Hawkins or Susan, or the survivor of them. As to him, who furnished the consideration, it was very like a contract for the benefit of a third person (Susan). A trite example of the latter is a life insurance policy payable to a designated beneficiary who pays none of the premiums which constitute the consideration to the insurer. The plan was referred to by the Oregon Supreme Court in *In re Edwards' Estate, infra,* which involved our form of statute, as a "poor man's will." [140 Or. 431, 14 P. (2d) 276.]

The reasoning and conclusion which have been stated are in accord with what we take to be the better-considered, modern decisions of other courts, some of which have been reached by aid of statutes of varying terms, and some without. Examples are *Cleveland Trust Co. v. Scobie,* 114 Ohio St. 241, 151 N. E. 373, 48 A. L. R. 182; *Goldston v. Randolph,* 1936, 293 Mass. 253, 199 N. E. 896, 103 A. L. R. 1117; *In re* Edwards' Estate, 1932, 140 Or. 431, 14 P. (2d) 274; and *In re* Lewis' Estate, 1943, 194 Miss. 480, 13 So. (2d) 20. The last cited, which was decided under a statute similar to ours, is especially enlightening and convincing.

In *Wisner v. Wisner,* 82 W. Va. 9, 95 S. E. 802, 803, it was said:

"Moreover, in the recent cases of *Chippendale v. North Adams Savings Bank,* 222 Mass. 499, 111 N. E. 371; *Blick v. Cockins,* 252 Pa. 56, 97 A. 125, and *Deal's Adm'r v. Merchants' & Mechanics' Savings Bank,* 120 Va. 297, 91 S. E. 135, L. R. A. 1917C, 548, the right of survivorship in joint estates created and evidenced by joint deposits like the one involved here was distinctly upheld, not upon the theory of a valid gift *inter vivos,* but by virtue of the contract of deposit. In the Virginia case it is said: 'It was a pure contractual relation, and no question of gift or trust arises in determining the rights of the parties under such a contract.' "

Affirmed.

BAKER, C. J., TAYLOR and OXNER, JJ., and LITTLEJOHN, Acting Associate Justice, concur.