19344

Thomas GILFORD, Individually and as Administrator of the Estate of John Hardy, Respondent, v. The SOUTH CAROLINA NATIONAL BANK et al., Appellants.

(186 S. E. (2d) 258)

*Robert A. McKenzie, Esq.,* of *Rogers, McDonald, Mc-Kenzie* and *Fuller,* Columbia, *the Appellants,* cites:

*Hemphill P. Pride, II, Esq.,* of *Jenkins, Perry & Pride,* Columbia, *for Respondent,* cites:

January 4, 1972.

LITTLEJOHN, Justice:

John Hardy died intestate on June 2, 1970. He left approximately $73,000 on deposit in The South Carolina National Bank in a joint-survivor account in the name of John Hardy or Thomas Gilford. His heirs-at-law are included among the seven individual defendants in this case. The bank, for no good reason appearing in the record, refused to deliver the money to its own depositor, Thomas Gilford, in keeping with its deposit card contract. He instituted this action (denominated a declaratory judgment action) individually and as administrator of the estate of John Hardy, and prayed the court to direct the bank to relinquish possession and control of the joint account and the money therein. It is

the contention of the respondent that the money passed to him individually by reason of: 1—a gift *inter vivos,* and 2—by reason of the joint account.

The suit as originally instituted was styled *Thomas Gilford, Individually and As Administrator of the Estate of John Hardy, deceased, v. South Carolina National Bank.* The action was commenced June 23, 1970. On July 14, by consent of the bank, the trial judge referred the issues to the Master in Equity to take testimony and report his findings and recommendations of fact and conclusions of law. At this point in the litigation the action was possibly one in equity for construction of the joint-account contract and construction of Section 8-171 of the Code. On July 23 the bank answered, asserting that it was a disinterested stakeholder, and alleging that the heirs of John Hardy should be made parties to the action.

Thereafter, on July 24, the court ordered that Lula H. Gilford, Pauline Gilford, Lula G. Harris, Rhodie Jacobs, Rachael Scott, Paul Richardson and Felton Richardson, be added as parties defendant and served with a copy of the original summons and petition, and a copy of the order directing additional parties. Service on these new parties was accomplished July 28. The order referring the issues to the Master was not served on the new parties.

Rachael Scott, Paul Richardson and Felton Richardson (appellants here) answered on August 18, denying that the bank account was a joint-survivor account, and denying (later by amended answer) that Thomas Gilford took the money by way of gift *inter vivos* to him. They asked that the $73,000 be paid to the estate of John Hardy, deceased, for distribution among all heirs. The issue of ownership between respondent and appellants was an issue at law and not equity.

On August 20, by letter dated August 19, appellants were notified by respondent's counsel that a reference had been set for hearing on August 27 before the Master. By letter dated

August 20 counsel for the appellants advised counsel for the respondent that a reference was inappropriate and that he was not aware of an order of reference and was not consenting to a reference. The letter further advised counsel for the respondent that it was his feeling that a jury trial was in order. He further requested counsel for the respondent to advise if his understanding that the matter had not been referred was incorrect. A copy of this letter was sent to the Master.

At the time set for the hearing counsel for the appellants appeared and objected to the reference and moved before the Master for a jury trial. The record then reflects:

"The Master: Did you move to have the Order of Reference set aside?

"Mr. McKenzie [Appellants' Counsel]: No, sir, we didn't; we feel that Judge Grimball set it aside himself in his subsequent Order of July 24th, when he added additional parties respondent.

"The Master: But he didn't revoke that Order of July 14th?

"Mr. McKenzie: No, sir, but that was in a different styled case.

"The Master: It is the same calendar number and same designated case, except additional parties.

"Mr. McKenzie: There were additional parties, but of course, this is an additional complicated matter, and we feel . . .

"The Master: You want to frame an issue for the jury, which you have under Rule the right to do?

"Mr. McKenzie: Yes, sir.

"The Master: What issue?

"Mr. McKenzie: The issue, as framed, I think it's set forth probably better in Mr. Herbert's [attorney for the bank] Answer than I could frame another."

The Master overruled the motion for a jury trial. Obviously he had no authority to grant the same. Counsel for the appellants then moved for a continu-

ance to prepare for trial, which was denied to the extent that respondent was allowed to proceed with his case; a continuance was granted to appellants to present their case, and they did a week later on September 3. On that day appellants' counsel moved to amend the answer (which was granted) and proceeded without further objections to the mode of trial.

On October 15 the Master filed his report recommending that the court declare the account to be a joint-survivor account and pay the money to Thomas Gilford in his individual right. In addition, the Master recommended that the court hold that the funds were a gift *inter vivos* from the deceased to the respondent.

Thereafter counsel for the appellants moved the trial judge for an order granting a new trial on the ground that the matter was improperly referred and a hearing held by the Master over objection of respondent, and on the ground that the matter is one at law for trial by jury. Simultaneously, exceptions were taken to the Master's Report.

On February 19, 1971, the trial judge issued an order refusing the motion for a new trial and confirming the Master's Report and holding that Thomas Gilford, individually, was entitled to the funds.

Rachael Scott, Paul Richardson and Felton Richardson, whom we refer to as appellants, appeal to this Court on 28 exceptions, raising, in our view, three basic questions:

1. Was it error to try the issues before the Master instead of a jury?

2. Was the bank account a joint-survivor account with Thomas Gilford entitled to take the money as survivor?

3. Did John Hardy make a valid gift *inter vivos* of the funds to Thomas Gilford?

We first answer the question relating to the mode of trial. The appellants have requested and been granted permission to argue against the decision of this Court in the case of *Beall Co. v. Weston,* 83 S. C. 491, 65 S. E. 823 (1909), on

which the lower court relied, and which held that the adding of additional parties after a consent order of reference did not revoke the order of reference in an equity case.

Appellants take the position that the order of reference was not valid to bind them; that their constitutional right to a jury trial has been violated; and that they were not properly notified of the reference.

We are of the opinion that the adding of additional parties after an order of reference has been issued does not automatically revoke nor invalidate the order. *Beall Co. v. Weston, supra.* Certainly those parties who moved for the order of reference and consented thereto were bound by it and were still before the Master. At that point the added parties had the right to be heard before the judge as to the mode of trial, but the Master in Equity had no authority to grant a jury trial. The Master was under the judge's directive to try the issues by way of a reference. On August 20 the appellants were notified that a reference had been set and would be held. On August 27 the Master inquired if a motion to vacate the order of reference had been made to the judge. No such motion had been made. The Master further inquired whether counsel wished to frame an issue for the jury. Counsel indicated that they did want to frame an issue for the jury, but never pursued that matter further. Instead, all issues raised by the pleadings were tried before the Master in the conventional fashion, with a continuance being granted to appellants to allow time for completion or presentation of evidence.

Even if the appellants were entitled to a jury trial, we have held that such may be waived. One should not be permitted to preserve a vice in the trial of a case and then, after losing the same, take advantage of the vice. If counsel wished a method of trial other than that which had been directed in the trial of the case, he should have moved before the judge, who alone had authority to grant the relief sought. It is interesting to note that the

Master was not asked for a continuance until counsel could move for a jury trial before the judge. Had counsel asked for a continuance in order that he might have time to move for a jury trial before the judge, and had such motion been overruled, we would not hesitate to hold that the Master abused his discretion. Under the circumstances it would be unfair to require the other parties to this litigation to try the case all over again. We agree with the trial judge, who said that this result is required "in the interest of orderly procedure."

"Waiver has been frequently defined as the voluntary relinquishment of a known right and may be express or implied." *Farmers' & Merchants' Bank v. People's First National Bank of Charleston,* 161 S. C. 286, 159 S. E. 617 (1931).

The fact that the right to a jury trial was asserted at the hearing is inconsistent with counsel's actions prior thereto. There can be no doubt but that counsel knew he was entitled to a jury trial on August 20. The right was impliedly waived. The contention that a new trial should be had because the appellants were not formally notified of the reference by the Master is without merit. The lower court held that there was no prejudice, and we agree.

Having concluded that the lower court did not err in refusing to grant the motion for a new trial by jury, we proceed to discuss the other questions relating to the trial of the case on its merits.

Appellants submit this question: Was the account held by the South Carolina National Bank in the names of John Hardy or Thomas Gilford a joint-survivor account with Thomas Gilford as survivor?

Section 8-171 of the South Carolina Code provides as follows:

"Payment of deposits made in name of two persons.— When any deposit has been made in any bank, banking institution or depository transacting business in this State in

the names of two persons, payable to either or payable to either or the survivor, such deposit or any part thereof may be paid to either of such persons, whether the other be living or not and the receipt or acquittance of the person so paid shall be a valid and sufficient release and discharge for any or all payments so made.

"The term 'deposit' shall include a certificate of deposit."

Appellants concede that by reason of our case of *Hawkins v. Thackston*, 224 S. C. 445, 79 S. E. (2d) 714 (1954), there was created in favor of the respondent a presumption that the account card signed by John Hardy and Thomas Gilford created the contractual relationship of a joint-survivor account between these parties and the bank. That case held that the statute creates a presumption that the parties intended it should be paid to the survivor as owner. That presumption will stand and entitled the survivor to full right of ownership unless rebutted by evidence to the satisfaction of the tryer of the facts. The Master and the lower court judge recognized these principles of law and applied them to the evidence. We cannot say that the findings and conclusions of the lower court are without evidentiary support.

Although John Hardy was unable to read and write he was by no means an ignorant person. He was thrifty, and the record reflects that he was knowledgeable in the handling of business matters and had experience in dealing with banks. His accumulation of the funds here involved came as a result of approximately 30 years employment with General Motors in Detroit. Upon his retirement he moved to Columbia and arranged for the transfer of the money from a Detroit bank to the South Carolina National Bank in Columbia.

Ronald Edward Crowley testified that he dealt with John Hardy regarding the building of a house, and that in his opinion Hardy was an able businessman.

Mrs. Rosalie Smith testified that she lived next door to John Hardy in Eastover, near Columbia. She said that

Hardy on several occasions told her that he placed Thomas Gilford's name on the bank book in a joint account because he (Gilford) had so many children and the money would help educate them.

Edward Steed Green testified as follows:

"Q. Prior to Mr. Hardy getting sick, did you have any conversation with him regarding what he intended to do with this money?

"A. Well, he had sat down one day between me and Cheeseborough, down there in the back yard, and he said he had decided to turn the money over to Tom Gilford, where he could educate his children, because he had a whole lot of young ones and he ain't got—and he needed it more so than the rest; so that's all he said about it."

The appellants have failed to rebut the presumption. On the other hand, the evidence fortifies it. The Master and the trial judge found the facts in favor of Thomas Gilford. We cannot say such finding is without evidentiary support.

Having concluded that Thomas Gilford is entitled to receive the money on grounds hereinabove indicated, it is not necessary for this Court to determine whether there was a gift *inter vivos*.

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.