20841

Rhudine JOHNSON, Appellant, v. Earline HERRIN, Individually and as "Administratrix" of The Last Will and Testament of Julia Adams, Respondent.

(250 S. E. (2d) 334)

*Isadore S. Bernstein*, of *Hammer & Bernstein*, Columbia, *for appellant.*

*Thomas D. Broadwater*, Columbia, *for respondent.*

December 28, 1978.

RHODES, Justice:

This action was commenced by appellant against respondent, Earline Herrin, individually and as executrix [1] of the will of Julia Adams, deceased, for an equitable accounting of her share of certain funds which she alleges passed to her under the residue clause of the decedent's will. The funds in question, which were the sole monetary assets of decedent at her death, were contained in two joint bank accounts bearing the names of Julia Adams and Earline Herrin. The lower court held that the joint nature of these accounts entitled the survivor, Earline Herrin, to full right of ownership of these funds. We reverse.

Julia Adams died June 24, 1975, leaving a will bearing the date of June 2, 1975. Under the terms of the will, she

---

[1] The fiduciary is erroneously designated in the will as "Administratrix".

appointed her niece, Earline Herrin, as executrix, directed that her debts be paid, and made disposition of the remainder of her estate by the following provisions:

Item III. I hereby will, devise, and bequeath unto my beloved nieces, Earline Herrin, and Rudine (*sic*) Johnson all of the rest of my real and personal property of whatever nature and wherever found.

Item IV. I direct that my niece, Earline Herrin, be allowed to obtain all monies out of our account at the S. C. National Bank on the corner of Lady and Main Streets, Columbia, South Carolina.

Until the time she executed her will, Julia Adams maintained several savings accounts in various financial institutions separate and apart from the accounts in issue; but, on the day after she signed her will, June 3, 1975, she withdrew the balances of these accounts and consolidated them into her checking account at South Carolina National Bank, bringing the balance to $38,433.22. Mrs. Adams also had an account at Standard Savings and Loan Association totalling approximately $14,000.00 which she did not combine with the above referenced funds at South Carolina National Bank. The net effect of these transactions was to collect the entirety of decedent's monetary assets into the two joint accounts existing at the time of her death with which we are now concerned. The exhibits indicate that the name of Earline Herrin was not added to Mrs. Adams' checking account at South Carolina National Bank or to her savings account at Standard Savings and Loan Association until May 28, 1975.

Shortly after the death of Mrs. Adams, Earline Herrin withdrew the balance of the funds on deposit, $13,470.60, at Standard Savings and Loan and transferred this amount to a newly created account in her name at this institution. The record further shows that on July 16, 1975, respondent transferred the entirety of the funds from the joint checking

account at South Carolina National, amounting to $38,-058.22, into a newly created account entitled the "Estate of Julia Adams". After the transfer, however, she immediately withdrew $30,000.00 of this money and used this amount to establish a savings account solely in her name, leaving the remainder of the funds in the estate account. With the exception of two disbursements voluntarily made to appellant, amounting to approximately $6,600.00, respondent has made no effort to disburse the proceeds from the joint accounts in accordance with the will but, instead, now claims personal ownership of all the funds involved.

The sole question for our consideration is whether the monies of the decedent contained in the two joint accounts should be distributed in accordance with the residue clause of her will, or whether the entirety of the funds should pass by right of survivorship to the joint tenant of these accounts. This being an action in equity and having been tried by the judge alone, this Court has jurisdiction to find the facts in accordance with its own view of the preponderance of evidence. *Townes v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976).

In asserting her right to ownership in the funds to the exclusion of the estate and appellant, respondent relies primarily on § 34-11-10, South Carolina Code of Laws (1976), which provides:

When any deposit has been made in any bank, banking institution or depository transacting business in this State in the names of two persons, payable to either or payable to either or the survivor, such deposit or any part thereof may be paid to either of such persons, whether the other be living or not and the receipt or acquittance of the person so paid shall be a valid and sufficient release and discharge for any or all payments so made.

Under authority of this section, our Court has held that when joint accounts are established in conformity with statutory provisions, a presumption arises that the parties

intended the monies as a gift to be paid to the survivor as owner. However, we have also recognized that this presumption may be rebutted by evidence which would negate the donative intention of the deceased. *Gilford v. South Carolina National Bank*, 257 S. C. 374, 186 S. E. (2d) 258 (1972); *Hawkins v. Thackston*, 224 S. C. 445, 79 S. E. (2d) 714 (1954).

In these two cases, our finding of donative intent did not rest solely on the contractual agreement between the depositors and the bank, but was fortified by testimony showing that the survivor of the joint account was meant to be favored by the deceased party. Such is not the case here for the record is barren of supportive evidence tending to prove that Mrs. Adams intended to make a gift of the joint account funds to the respondent. On the contrary, the provisions of the will as well as the respondent's own actions in handling the funds are inconsistent with the view that the decedent established the accounts with donative intent towards the niece named on the accounts. As previously stated, the contractual agreement between the banks and depositors does not conclusively determine rights between the parties. Thus, it is necessary that we turn to the circumstances underlying creation of the accounts and the making of the will.

In construing parties' rights in a joint account which may conflict with terms of a valid will, courts have regarded as significant the fact that a gift to the survivor would be destructive of the depositor's general testamentary plan to dispose of his assets in equal shares. Annot., 43 A. L. R. (3d) 1048 (1972). In this context, appellant urges that the clear intent of the will is that the estate be equally divided between her two nieces, the appellant and respondent herein. We agree.

Aside from a few personal belongings of negligible value, the only asset of Mrs. Adams at her death was cash amounting to $51,528.82, all of which was contained in the two

disputed accounts. To hold that the testatrix intended the respondent to receive the entirety of these funds in her joint accounts would leave nothing for appellant although Item III of decedent's will clearly directs that her nieces be treated equally. Such a holding would render meaningless the portion of decedent's will which provided for payment of her debts since there were no funds available for this purpose other than those contained in the joint accounts. It is highly improbable that the testatrix, who was suffering from terminal cancer, would place all her funds beyond the reach of her estate while, contemporaneously therewith, making a will providing for both of her nieces.

The more logical conclusion is that the testatrix established the joint accounts and combined all her funds thereunder believing that the monies would at her death be owned by her estate to be disposed of in accordance with her will. Such a conclusion would also explain deceased's reasoning behind Item IV wherein she directed that Mrs. Herrin "be allowed to obtain all monies out of our account at the S. C. National Bank". While the trial judge correctly concluded that this clause did not pass title in the account at South Carolina National, he held that it effectively classified the money as being jointly owned by the testatrix and respondent. We, however, view insertion of this provision as merely descriptive of the account and as a method of assuring that Earline Herrin, as executrix, could take possession of the funds and make distribution in accordance with the terms of the will. It appears to us that the terms of the will and its time of execution substantially weigh against the presumption that the decedent intended that the bank accounts be a gift to respondent.

In arguing against the presumption that the deceased intended these funds as a gift to respondent, appellant contends that respondent's actions in the probate court demonstrate that respondent herself was of the belief that the funds in question should pass under terms of the will. The

exhibits of record reflect that respondent initially listed in the verified petition to prove will that the monetary assets of the deceased's estate were $38,058.77, which was the sum then on deposit in the checking account at South Carolina National. Such circumstance has been held to be a factor tending to negate a presumption of the depositor's donative intent in a number of cases. *In Re Cronholm's Estate,* 38 Ill. App. (2d) 141, 186 N. E. (2d) 534 (1962). *In Re Chase's Estate,* 82 Idaho 1, 348 P. (2d) 473 (1960). Respecting the joint savings account at Standard Savings and Loan, there is likewise evidence that the respondent recognized that appellant should receive an equal share as provided in the will. Following the death of testatrix, respondent voluntarily made two payments to appellant out of these funds which amounted to $6,664.81, or approximately one half of the account's balance at the testatrix's death. While respondent characterizes these disbursements as gifts to appellant for her help in caring for Mrs. Adams, we are of the view that such act was induced by her own knowledge of the testatrix's intention to treat her nieces equally pursuant to provisions in her will. In this connection it should be pointed out that respondent was in a peculiarly advantageous position to have knowledge of the intentions of the decedent in regard to her property. Decedent lived in the home of respondent during the days of her terminal illness and it was, in fact, the respondent who visited the attorney's office to procure preparation of the will.

Of similar tenor, the fact that the joint deposits were used exclusively by or for the depositor's benefit during her lifetime has been viewed as probative evidence rebutting the presumption of donative intent on the part of the deceased. Annot., 43 A. L. R. (3d) 1039 (1972). The exhibits of record indicate that the respondent made only two withdrawals from these accounts prior to the death of the decedent, both withdrawals being for the exclusive benefit of the decedent.

We conclude that the preponderance of the evidence shows that the decedent never intended that the entirety of the funds in the two accounts in question be owned by the respondent. It follows that such funds are assets of the decedent's estate to be distributed in accordance with her last will and testament.

Reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.