0580

ESTATE OF E. A. STANLEY, deceased, Emma Lee S. Fore and Ruth Dixon, Respondents, v. Lydia S. SANDIFORD and Estelle James, Appellants.

(337 S. E. (2d) 248)

Court of Appeals

*Thomas D. Broadwater, Sr.,* Columbia, *for appellants.*

*Franklin R. DeWitt,* Conway, *for respondents.*

Heard Sept. 25, 1985.

Decided Nov. 20, 1985.

*Per Curiam:*

This action concerns the administration of the estate of English A. Stanley, who died testate. The four parties to this action are Stanley's daughters. The appellants, Lydia A. Sandiford and Estelle S. James, claim that Sandiford is the owner of funds in a joint bank account with right of suvivorship which bore the names of E. A. Stanley and Lydia Sandiford. The respondents, Emma Lee S. Fore and Annie Ruth S. Dixon, claim that the account is a part of the decedent's estate and should be distributed to all of the parties in accordance with the residuary clause of the decedent's will. The probate court and the circuit court held that the disputed funds are assets of the decedent's estate. We affirm.

The issues raised by the appellants are whether the probate court had subject matter jurisdiction to entertain the action to determine whether the joint bank account was estate property and whether the circuit court correctly included the account in the estate.

This case essentially involves the determination of ownership of the savings account. The issue of title to property is a legal one. *Privette v. Garrison,* 235 S. C. 119, 130, 110 S. E. (2d) 17, 23 (1959); *Frady v. Ivester,* 118 S. C. 195, 203, 110 S. E. 135, 137 (1921). An action involving probate of a will is an action at law. *Martin v. Skinner,* 335 S. E. (2d) 252 (S. C. Ct. App. 1985); *In re Soloman's Estate,* 74 S. C. 189, 193, 54 S. E. 207, 208 (1906). Our Supreme Court has held that the findings of fact by a probate judge will not be set aside on appeal unless they are clearly or manifestly erroneous. *Payton v. Payton,* 270 S. C. 275, 278, 241 S. E. (2d) 901, 903 (1978); *Estate of O'Neill v. Tuomey Hospital,* 254 S. C. 578, 584, 176 S. E. (2d) 527, 530 (1970); *Ex Parte Blizzard,* 185 S. C. 131, 135, 193 S. E. 633, 634 (1937). The facts in this case are set forth as follows.

Stanley and his wife, Mary, opened a joint savings account in 1968. After her death in June 1972, the wife's name was removed from the account and Sandiford's name was added to the account. Sandiford signed a signature card reflecting the change of names. The bank did not require nor did the decedent sign the new signature card.

Stanley died on January 24, 1980. At the time, he was living with his daughter, Dixon, whom he had asked to secure the passbook which showed an account balance of nearly $13,000. This sum represents solely the decedent's savings. Stanley left a will dated June 15, 1979. The will's residuary clause left all of his property not specifically bequeathed or devised to the parties in equal shares. The will also provided that the testator was not providing for certain of his children because he had made provision for them during his lifetime. To settle the decedent's estate, the children met in the law office of H. E. McCaskill. There Dixon gave the passbook for the savings account to Sandiford, co-executrix with Fore. At this meeting a preliminary petition to prove the will was prepared which showed the savings account funds as part of the decedent's estate. At the conclusion of the meeting, Sandiford refused to sign the petition. Thereafter, Sandiford submitted another petition to the probate court which showed the account funds as a joint bank account with right of survivorship.[1] Soon thereafter, this action was initiated by Fore and Dixon to determine whether the funds in the account were either a part of their father's estate to be distributed to the legatees or owned solely by Sandiford.

At the trial before the probate judge, four of Stanley's children testified. Their testimony indicated that while the decedent lived he used the funds in the account for his sole benefit. Each of them testified that on various occasions they either made deposits or withdrawals for their elderly father or they accompanied him while he conducted his banking transactions. Although the decedent allowed his children to perform banking transactions for him, he never surrendered the management of his finances to them. Fore

---

[1] Fore neither saw nor signed this petition before its submission to the probate court.

testified, "[W]e did not handle his money. He did not trust us with his money." Dixon testified, "[H]e took care of his own business." Sandiford testified, "He kept the passbook (regarding the disputed account) under his control." Based upon these facts, the probate court concluded that the decedent never intended the funds in the account to be owned by Sandiford and to find otherwise would destroy the decedent's general testamentary plan to dispose of his assets. The circuit court sustained the probate court's order requiring the funds in the account to be included as an asset of the decedent's estate.

As in *Ag-Chem Equipment Co. v. Daggerhart*, 281 S. C. 380, 383, 315 S. E. (2d) 379, 381 (Ct. App. 1984) the exceptions in this case "fail to state any concise proposition of law or fact . . . as is required by Supreme Court Rule 4, Section 6." However, because this case raises an issue of jurisdiction, we will consider the issues. *Ag-Chem*, 281 S. C. at 383, 315 S. E. (2d) at 381.

The appellants' first argument is that the probate court lacked subject matter jurisdiction to determine ownership of the disputed account. Their argument is meritless. Under Section 14-23-1150, 1976 Code of Laws of South Carolina, as amended "Every judge of probate in his county, shall have jurisdiction . . . in all matters testamentary and of administration, including jurisdiction in such matters to declare rights, status and other legal relations whether or not further relief is or could be claimed. . . ." The administration of an estate entails collection of the decedent's personal property and the distribution of it to those entitled to it. *Shelley v. S. C. Department of Mental Health*, 283 S. C. 344, 346, 322 S. E. (2d) 687 (Ct. App. 1984); *McNamee v. Waterbury*, 4 S. C. 156, 163 (1872). Plainly, under long established case law, the probate court is required to identify the assets in the estate and to distribute them pursuant to the decedent's will. Here, the probate court did just this.

The appellants next argue that Sandiford is entitled to ownership of the savings account by virtue of the contract between the decedent and the bank. The appellants argue that a contract between the decedent and the bank existed even though the deceased depositor did not

sign the signature card on which Sandiford's name appears. The probate and circuit courts attached great significance to the fact that the decedent did not sign the signature card. We infer that the lower courts concluded that there was no executed contract under which Sandiford could claim to be the beneficiary. We hold that the contract of deposit creating a joint account need not be in any particular form. However, the instrument representing the contract must be in writing, be properly executed and show a meeting of minds of the parties. 10 Am. Jur. (2d) *Banks* Section 369 (1963).

We deem it unnecessary to find conclusively that a contract creating a joint account existed because in any event, we reject Sandiford's claim to ownership of the funds in the savings account. Our Supreme Court has held as valid, contracts providing that payments of a joint bank account may be made to either person or the survivor. *See Johnson v. Herrin,* 272 S. C. 224, 250 S. E. (2d) 334 (1978); *Gilford v. South Carolina National Bank,* 257 S. C. 374, 186 S. E. (2d) 258 (1972); *Hawkins v. Thackston,* 224 S. C. 445, 79 S. E. (2d) 714 (1954). However, in both *Gilford* and *Hawkins,* the Court found that in addition to a contractual agreement between the bank and the depositors, testimony showing that the deceased intended to benefit the survivor was required in order for the survivor to claim the account funds. Thus, the mere establishment of the joint savings account contract does not conclusively establish the rights of the contracting parties.

In *Johnson,* 272 S. C. at 227-28, 250 S. E. (2d) at 336, our Supreme Court explained that once the contractual agreement is established, a presumption arises that the parties intended the funds be a gift payable to the survivor as owner. "[T]his presumption of ownership is a rebuttable presumption, which is nothing more than a rule of evidence." *Rutchick v. Salute,* 288 Minn. 258, 179 N. W. (2d) 607, 43 A.L.R. (3d) 963, 968 (1970). The "presumption may be rebutted by evidence which would negate the donative intent of the deceased." 272 S. C. at 228, 250 S. E. (2d) at 336.

In *Johnson* the Court concluded that the survivor was not entitled to ownership of the funds even though there was no question about the existence of the joint savings account

contracts. The court's rationale rested on three facts. One, while the deceased lived, the funds were used solely for her benefit. Two, the disputed funds consisted of the greater part of the deceased's estate and it is unlikely that the deceased would place these funds outside of the estate and contemporaneously execute a will. Three, to find the funds to be a gift to the survivor would be destructive of the deceased depositor's testamentary plan to dispose of her assets passing under the residuary clause to legatees, including the survivor, in equal shares. 272 S. C. at 228-30, 250 S. E. (2d) at 336-37.

We follow *Johnson* to reach our decision. The funds in the disputed account belonged to the decedent and during his lifetime were used solely for his benefit. The disputed funds amount to a little over two-thirds of the cash in the decedent's estate and no reason is shown why he would make such a sizeable gift to the survivor. *Cf. Nashua Trust Co. v. Heghene Mosgofian*, 97 N. H. 17, 79 A. (2d) 636 (1951) (brother with both joint savings account payable to himself and a brother and a will dividing estate equally between both of his brothers held not to have made an *inter vivos* gift of the funds in the account where funds accounted for two-thirds of his assets). Finally, a finding of a gift to the survivor would destroy the deceased's testamentary plan. The will explicitly stated that he bequeathed the residue of his estate in equal shares to four of his daughters and that he intentionally did not make provision for certain of his children because he had made ample provision for them during his lifetime. It seems unlikely to us that the decedent would have attempted by the joint account to take care of Sandiford by *inter vivos* gift, yet name her as an equal beneficiary in the will also. We infer from Stanley's will and the transcript of testimony that he intended to benefit his children equally. The construction advanced by the appellant would not be consistent with the decedent's intent.

Our review of the entire record discloses that the probate and circuit courts correctly applied the applicable law and there are ample facts to support the circuit court's order. Therefore, the order of the circuit court is

Affirmed.

SHAW, BELL and CURETON, JJ., concur.