491 S.E.2d 267

ESTATE OF Andrew B. CHAPPELL, Miracle Hill Ministries, Inc. and Gerald Rodney Satterfield, Plaintiffs,

Of Whom Gerald Rodney Satterfield and Miracle Hill Ministries, Inc., are Appellants,

v.

Judy Jo Ann T. GILLESPIE, Individually and as the Personal Representative of the Estate of Andrew B. Chappell, Respondent.

No. 2696.

Court of Appeals of South Carolina.

Heard June 4, 1997.

Decided July 21, 1997.

618

David W. Holmes, Greenville, for Appellant Miracle Hill Ministries, Inc.

Daniel E. Hunt, Easley, for Appellant Gerald Rodney Satterfield.

G. Edward Welmaker, of Acker, Welmaker, Johnson & Gravely, Pickens, for respondent.

HOWELL, Chief Judge.

This case involves competing claims to money held in a checking account. The circuit court granted judgment notwithstanding the verdict to Judy Gillespie. Gerald Satterfield and Miracle Hill Ministries, Inc. (together, the Appellants) appeal. We affirm.

## I.

On July 23, 1993, Andrew Chappell executed a will in which he left all of his real estate to Satterfield. Chappell also left $7,500.00 in trust to each of Satterfield's two daughters, naming Gillespie as trustee. The will included no other

specific devises, but included a residuary clause leaving one-fourth of the residue of the estate to Gillespie, one-fourth to Miracle Hill, and one-half to Satterfield. Chappell nominated Gillespie as the personal representative of his estate. There was no mention in the will of any bank accounts or other specific assets to be used to satisfy the devises.

On July 26, 1993, Chappell and Gillespie went to the Central branch of NationsBank, where Chappell added Gillespie's name to his checking account. Sarah Porter, the bank's customer service representative, gave Chappell a copy of the thirty-two page deposit agreement, which he took home. Part 1(a) of the deposit agreement explained the ownership of joint accounts, stating that all parties to the joint account are considered co-owners of the account, regardless of who actually deposited the fund in the account. The agreement also provided that, upon the death of one of the parties, "[t]he balance in the account will belong to the survivor(s) subject to any limitations which may be imposed by law." While Porter explained to Chappell that adding Gillespie's name to the account gave her authority to write checks on the account, she did not mention that Gillespie would receive the entire proceeds of the account upon Chappell's death. Porter printed a new signature card for Chappell and Gillespie to sign. The card designated the account as a joint account with survivorship and provided that, by signing the card, Chappell acknowledged that he had received a copy of the deposit agreement and that he agreed to its terms.

Chappell died on September 16, 1993. The Inventory and Appraisement filed with the probate court revealed that Chappell held the following assets: real estate valued at $60,000; mortgages, notes, and cash amounting to $19,575; the NationsBank account containing $81,480; a truck, titled jointly with Gillespie, valued at $1,000; $285 worth of life insurance; and other miscellaneous property valued at $7,631. Gillespie withdrew the majority of the funds from the NationsBank account on September 29, 1993. As personal representative, Gillespie proposed a distribution of Chappell's assets whereby each of Satterfield's daughters would receive $2,629.92, Satterfield would receive the real estate, which was specifically devised to him, and a note valued at $11,734, and Miracle Hill would receive $1,000 in cash.

Both Satterfield and Miracle Hill filed complaints with the probate court claiming Gillespie wrongfully withheld the funds in the NationsBank account from the distribution of the estate. On request from Miracle Hill, the case was transferred to the circuit court for a jury trial. The plaintiffs' theory of the case was that Chappell had not intended to make a gift to Gillespie of the contents of the NationsBank account when he added her name to the account. The jury returned a verdict in favor of the Appellants, specifically finding that the transaction in question was not a gift to Judy Gillespie. The trial court granted Gillespie's motion for judgment notwithstanding the verdict.

## II.

Pursuant to S.C.Code Ann. § 34–11–10 (Supp.1996), "when a deposit has been made in a bank . . . in the names of two or more persons, . . . the deposit or any part thereof may be paid to any of the persons, whether the other or others are living or not." Our Supreme Court has interpreted section 34–11–10 to create a rebuttable presumption that the account holders intended the funds in the account to be a gift to the survivor. *See Johnson v. Herrin,* 272 S.C. 224, 250 S.E.2d 334 (1978). It was under this body of law that the Appellants presented their case, and the trial court instructed the jury on the factors set forth in the case law to determine whether the presumption of gift had been rebutted.

Throughout the trial, however, Gillespie argued that section 34–11–10 was subject to the Probate Code, specifically S.C.Code Ann. § 62–6–101 (1987 & Supp.1996) and related provisions. The trial court rejected Gillespie's arguments and declined to charge the portions of the Probate Code Gillespie requested. After the jury's verdict, however, the trial court announced that it had discovered that section 34–11–10 was amended in 1990 to make it subject to the provisions of the Probate Code, as argued by Gillespie. The court then granted Gillespie's JNOV motion based on the application of the Probate Code.

As the trial court properly noted, section 34–11–10 is "[s]ubject to the provisions of Sections 62–6–101, et seq., of the

South Carolina Probate Code." S.C.Code Ann. § 34–11–10. Pursuant to section 62–6–104 of the Probate Code:

> (a) Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is a writing filed with the financial institution at the time the account is created (or subsequently as provided under § 62–6–105) which indicates a different intention.

*    *    *    *    *    *

> ■ (e) A right to survivorship arising from the express terms of the account or under this section . . . cannot be changed by will; however, a party who owns a joint account under the provisions of Section 62–6–103(a)[1] may effect such change by will to the extent of his ownership if the will contains clear and convincing evidence of his intent to do so.

S.C.Code Ann. 62–6–104 (1987 & Supp.1996). Thus, section 62–4–104 establishes two means by which the right of survivorship of a joint account may be changed—by filing with the financial institution a writing indicating a different intended distribution of the account proceeds, or by clear and convincing evidence of a different intended distribution contained in the will of an owner of the account to the extent of his ownership as determined by section 62–6–103(a). *See Matthews v. Nelson,* 303 S.C. 489, 492, 401 S.E.2d 669, 671 (1991) (Even if no writing is filed with the financial institution, section 62–6–104(e) requires a court to examine the account owner's will to determine if clear and convincing evidence exists of an intent to change the right of survivorship in a joint account.).[2]

---

1. Under S.C.Code Ann. § 62–6–103(a) (1987), "[a] joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent."

2. In *Smith v. McCall,* 324 S.C. 356, 357–58, 477 S.E.2d 475, 476 (Ct.App.1996) and *Childs v. First Nat'l Bank of Pickens County,* 306 S.C. 20, 21–22, 410 S.E.2d 17, 18 (Ct.App.1991) *cert. denied* (Dec. 19, 1991), this Court indicated that the only method of changing the right of survivorship of a joint account was through a writing filed with the banking institution. There is no indication in either of those cases,

## A.

The Appellants first argue that, by its own terms, section 62–6–104 of the Probate Code does not apply to this case. We disagree.

Section 62–6–104(f) states:

The provisions of § 62–6–104(a), (b), and (c) are applicable to all multiple-party accounts created subsequent to the effective date of this section, and unless there is clear and convincing evidence of a different intention at the time the account was created, to all multiple-party accounts created prior to the effective date of this section.

S.C.Code Ann. § 62–6–104(f) (Supp.1996). The Probate Code and the relevant portions of section 62–6–104 became effective on July 1, 1987. S.C.Code Ann. § 62–1–100 (Supp.1996)

According to the Appellants, section 62–6–104 applies only to accounts that are originated as joint accounts after July 1, 1987. Chappell opened the account at NationsBank's predecessor in interest before 1987, but did not change the account to a joint account until July 26, 1993. Thus, the Appellants argue that section 62–6–104 does not apply to Chappell's account because the account was *created* before the effective date of the Probate Code and was only *changed* to joint account after the effective date. We find this argument wholly unpersuasive.

Under section 62–6–104(f), there are two categories of multiple-party accounts [3]—those created after the effective date of the statute, to which the statutory presumption of 62–6–104(a) applies, and those created before the effective date of the statute, to which 62–6–104(a) applies "unless there is clear and convincing evidence of a different intention at the time the account was created." S.C.Code Ann. § 62–6–104(f); *see also* S.C.Code Ann. § 62–1–100(b)(5) (Supp.1996) ("[A]ny rule of construction or presumption provided in this Code applies to instruments executed and multiple-party accounts opened *before* the effective date unless there is a clear indication of a contrary intent.") (emphasis added). The Appellants' argument, however, effectively creates a third category—joint

---

however, that the application of S.C.Code Ann. § 62–6–104(e) was ever raised.

3. A "multiple-party account" includes a joint account. S.C.Code Ann. § 62–6–101(5) (1987).

accounts that were changed but never created, and thus could never be subject to the Probate Code.

When faced with an undefined statutory term, we must interpret the term in accord with its usual and customary meaning. *Adoptive Parents v. Biological Parents,* 315 S.C. 535, 446 S.E.2d 404 (1994). Words must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation. *Rowe v. Hyatt,* 321 S.C. 366, 468 S.E.2d 649 (1996); *Paschal v. State Election Comm'n,* 317 S.C. 434, 454 S.E.2d 890 (1995). In its usual and customary sense, "create" means to bring into being, or cause to exist. *See, e.g., Oxford English Dictionary* (compact ed. 1975) (create: "To bring into being, cause to exist"); *American Heritage Dictionary* (2d college ed. 1982) ("To cause to exist; bring into being"); *Black's Law Dictionary* (5th ed. 1979) ("To bring into being; to cause to exist; to produce"). Regardless of when the account was first opened, there was no joint account until Gillespie's name was added. Therefore, for the purposes of this case, the joint account came into being and was created after the effective date of section 62–6–104. Accordingly, the trial court properly concluded that section 62–6–104 controls the disposition of the Appellants' claims.

### B.

Given our conclusion that section 62–6–104 governs this action, the question now becomes whether the Appellants presented any evidence tending to establish compliance with either statutory means of overcoming Gillespie's right of survivorship.

When reviewing the denial of a motion for judgment notwithstanding the verdict, this Court must employ the same standard as the trial court—that is, we must consider the evidence in the light most favorable to the non-moving party. *See, e.g., Brady Dev. Co. v. Town of Hilton Head Island,* 312 S.C. 73, 439 S.E.2d 266 (1993). Judgment notwithstanding the verdict should not be granted unless only one reasonable inference can be drawn from the evidence. *Id.; see also Dalon v. Golden Lanes, Inc.,* 320 S.C. 534, 466 S.E.2d 368 (Ct.App.1996). In this case, because Gillespie properly pre-

sented to the trial court the issue of the application of the Probate Code to the Appellants' claims, the question before this Court is not whether there is evidence in the record to support the jury's verdict (which was premised on incorrect law), but rather, whether there is any evidence in the record that could sustain a verdict in favor of the Appellants under an application of the correct law.

■ It is undisputed that Chappell never filed with NationsBank a writing altering the right of survivorship of his checking account. Thus, the question is whether, pursuant to section 62-6-104(e), there was clear and convincing evidence in Chappell's will that he intended to alter Gillespie's right of survivorship of the NationsBank account. The Appellants argue that the residuary clause leaving Gillespie twenty-five percent of any remaining assets, when combined with the fact that the specific devises in Chappell's will could not be funded absent the proceeds of the NationsBank account, amount to clear and convincing evidence that Chappell intended to change Gillespie's right of survivorship. We disagree.

The only South Carolina case addressing the quantum of evidence necessary to overcome the right of survivorship is *Matthews v. Nelson,* 303 S.C. 489, 401 S.E.2d 669 (1991). In *Matthews,* our Supreme Court determined that the provisions in a will provided clear and convincing evidence to alter the right of survivorship in a joint account. 303 S.C. at 493, 401 S.E.2d at 671. In *Matthews,* Davis entered into a contract to make a will with Nelson in September 1986. Davis simultaneously executed a will devising one third of a joint money market account held with Matthews to Nelson and providing that if the account were transferred, Nelson would have the same interest in the funds wherever deposited. Davis devised the residue of her estate to Matthews. Shortly before she died, Davis transferred the funds from the money market account into a certificate of deposit held jointly with Nelson. *Id.* at 491-92, 401 S.E.2d at 670. The Supreme Court concluded that both the will and the contract, which was incorporated by reference into the will, straightforwardly awarded Nelson one-third of the account funds. Thus, the Court held that clear and convincing evidence existed in the will of an intent by Davis to change the right of survivorship. *Id.* at 492-93, 401 S.E.2d at 671. The Court explained if the account were

not mentioned in the will, an argument that the residue clause alone should not control the distribution of the account would be persuasive. However, "[b]y expressly mentioning that Nelson was to receive one-third of the account funds, the negative implication is that he is not to receive more." *Matthews*, 303 S.C. at 493, 401 S.E.2d at 671.

In this case, Chappell's will does not specifically mention the NationsBank account or any other assets to be used in satisfying the devises, nor is there any statement in the will indicating that he intended for Gillespie to receive only what was specifically mentioned in the will. Thus, we find no language in the will that provides clear and convincing evidence of an intent to change the right of survivorship.

■ Although there were witnesses who testified that they believed Chappell would not have made specific devises in his will if he did not have the assets to fund them, this testimony does not, as argued by the Appellants, amount to evidence that Chappell did not intend for Gillespie to receive the funds on deposit in the joint account. Section 62–6–104 provides for two methods of changing the right of survivorship of a joint account—through a writing filed with the banking institution, or through clear and convincing evidence of such an intent *contained in the will* of the account owner. Vague testimony about what others believed the testator might have wanted is simply insufficient—the statute clearly requires that the evidence of the testator's intent to alter the right of survivorship must be found in the will, not in the testimony of third parties about their perceptions of the testator's intentions.[4] *See Matthews*, 303 S.C. at 493, 401 S.E.2d at 671 (Considering evidence contained in a contract to make a will, because the contract "was incorporated by reference into the will, and we may thus consider it in our application of § 62–6–104(e)."). Accordingly, we conclude that the trial court correctly applied S.C.Code Ann. § 62–6–104 in awarding the entire proceeds of the account to Gillespie.

---

4. Moreover, as the attorney who drafted Chappell's will testified, specific devises are often included in wills with the expectation that, by the time the testator dies, there will be sufficient assets to fund the devises.

## C.

Finally, the Appellants contend that, assuming S.C.Code Ann. § 62–6–104 is applicable to this case, the trial court erred in granting Gillespie's JNOV motion rather than granting a new trial. We disagree.

As noted above, Gillespie consistently and correctly argued to the trial court that the case was governed by the Probate Code. Viewing the evidence in the light most favorable to the Appellants, we find that the trial court's conclusions were the only possible inferences that could be drawn from the evidence and that there is no evidence that would have supported sending the case to jury under the applicable law. Given our conclusion that Chappell's will does not, as a matter of law, contain clear and convincing evidence that Chappell intended to change Gillespie's right of survivorship, no purpose could be served by granting a new trial. Thus, we conclude that the trial court did not err in granting Gillespie judgment notwithstanding the verdict.

Accordingly, for the foregoing reasons, the decision of the trial court is hereby

**AFFIRMED.**

GOOLSBY and ANDERSON, JJ., concur.